**FACIT, INC., Plaintiff,**

v.

**KRUEGER, INC., Defendant and Counter–Plaintiff,**

v.

**FACIT, INC., Counter–Defendant,**

**Human Factors Technologies, Inc., Ericsson Information Systems, AB, Tom Jahn and Alan Morse, Additional Defendants on Counterclaims.**

**No. 86 Civ. 1268 (JFK).**

United States District Court, S.D. New York.

Feb. 27, 1990.

---

**18.** We also note that defendant made no motion at trial to dismiss the state claims pursuant to

Fed.R.Civ.P. 41(b).

David J. Grais, Grais & Richards, New York City, for Facit, Inc. and Ericsson Information Systems, AB.

Susan M. Campbell and Denny Chin, Campbell, Patrick & Chin, New York City, for Human Factors Technologies, Inc., Tom Jahn and Alan Morse.

William H. Levit, Jr., William E. Duffin, Godfrey & Kahn, S.C., Milwaukee, Wis., and Roger L. Zissu and Elliot M. Schachner, Cowan, Liebowitz & Latman, P.C., New York City, for Krueger, Inc.

KEENAN, District Judge:

Before the Court is the motion of defendant and counter-plaintiff Krueger, Inc. ("Krueger") for an Order vacating an Order dated April 13, 1987 in which the Court granted the motion to dismiss of third-party defendants Tom John and Alan Morse for lack of personal jurisdiction. Fed.R. Civ.P. 60. Also before the Court is a motion for partial summary judgment by Facit, Inc. ("Facit"), Human Factors Technologies, Inc. ("HFT") and Ericsson Information Systems, AB ("Ericsson") pursuant to Federal Rule of Civil Procedure 56.[1]

## FACTS

The facts of this case are set forth in a thorough decision reported at 657 F.Supp. 1069 (S.D.N.Y.1989) (Walker, J.) and will be summarized for purposes of this discussion.

Plaintiff Facit is a distributor of office furniture referred to as "computer support furniture." Facit is incorporated under the laws of Delaware with its principal place of business in New Hampshire. Defendant Krueger is a Wisconsin corporation with its principal place of business in Wisconsin, and also manufactures computer support furniture. Third-party defendants Jahn and Morse, both former Facit employees, currently serve as officers of third-party defendant HFT.

Facit initiated this suit in 1986, alleging that Krueger breached a 1983 settlement agreement with it by failing to make payments due under the settlement. Krueger counterclaimed, alleging that Facit, together with the additional defendants on coun-terclaims, was responsible for breaching the 1983 agreement. Pursuant to the agreement, Krueger had exclusive rights to manufacture the "920 Series," a specific line of computer support furniture. Krueger alleges that Facit violated Krueger's exclusive marketing rights under the agreement by selling and distributing the "Generation III" line of computer support furniture, which Krueger alleges is a virtual copy of the 920 Series.

In January 1984, the parties entered into an agreement settling litigation commenced by Krueger in the United States District Court for the Eastern District of Wisconsin. According to the settlement, Facit agreed to discontinue selling the Generation III line.

In April 1984, HFT was incorporated under the laws of New Hampshire. In May 1984, HFT purchased the Facit Furniture Division. Krueger alleges that HFT was founded by Facit for the purpose of distributing the Generation III line, in violation of the settlement agreement. Krueger's counterclaims allege tortious interference with contractual relations against Tom Jahn, Alan Morse and HFT. Krueger also alleges unfair competition against Facit and HFT.

## DISCUSSION

### I. *Rule 60(b) Motion*

Krueger bases its motion to vacate on the ground that the April 13, 1987 Order was premised on the "fiduciary shield" doctrine, which subsequently was held by the New York Court of Appeals to be unavailable to defeat personal jurisdiction in New York. *See Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 527 N.Y.S.2d 195, 522 N.E.2d 40 (1988). As stated in *Kreutter*, the fiduciary shield doctrine "provides that an individual should not be subject to jurisdiction if his dealings in the forum State were solely in a corporate capacity." 527 N.Y.S.2d at 199, 522 N.E.2d at 44.

---

1. The parties to both of these motions submitted surreply memoranda and, in the case of the Rule 60 motion, a second reply memorandum.

The Court did not give the parties permission to file these supplemental briefs, and they therefore have not been considered by the Court.

The following facts are pertinent to this discussion. On April 13, 1987, Judge Walker issued a decision granting Jahn and Morse's motion to dismiss for lack of personal jurisdiction. On March 29, 1988, the New York Court of Appeals decided *Kreutter*. On July 25, 1988, upon HFT's request, Judge Walker recused himself from the case. On August 4, 1988, Krueger wrote to Judge Walker requesting that he decide a pending discovery motion regardless of his recusal. On December 13, 1988, Krueger wrote to Judge Walker requesting a pre-motion conference for a motion to vacate his prior Order. The case was re-assigned to Judge Keenan on February 7, 1989. A conference was held with Judge Keenan on March 7, 1989, during which a motion schedule was determined. Krueger filed its Rule 60(b) Notice of Motion on March 13, 1989.

Krueger brings its motion under Rule 60(b) without identifying a particular subsection. In its supporting brief Krueger argues that 60(b)(5) and (6) apply, and in its reply brief it argues that 60(b)(1) applies. Rule 60(b) provides:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; ... (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken.

A motion under Rule 60(b) is addressed to the discretion of the court, and the Rule attempts to strike a proper balance between the conflicting principles of the finality of litigation and that justice should be done. C. Wright & A. Miller, *Federal Practice and Procedure* § 2851 at 140 (1973 & Supp.1989). Courts may consider equitable principles when determining a Rule 60 motion. Rule 60 is not, however, to be used as a substitute for appeal. *See id.*

The Court must first determine under which subsection of Rule 60(b) Krueger's motion falls. It has been held that Rule 60's catch-all provision found in 60(b)(6) may be used "only if other, more specific grounds for relief encompassed by the rule are inapplicable." *Maduakolam v. Columbia University*, 866 F.2d 53, 55 (2d Cir. 1989). Because the Court finds that Krueger's motion falls under Rule 60(b)(1), the other two subsections referred to need not be addressed.

Rule 60(b)(1) allows for relief from a final judgment, order or proceeding for "mistake, inadvertence, surprise or excusable neglect." Krueger argues that 60(b)(1) applies because Judge Walker made a mistake in finding that New York recognizes the fiduciary shield doctrine to defeat the assertion of personal jurisdiction under New York's long-arm provision. Krueger indicates that the *Kreutter* court did not change New York law with its decision, but held that there is not and never has been a fiduciary shield doctrine in New York. *See Kreutter*, 527 N.Y.S.2d at 200–02, 522 N.E.2d at 45–7 ("none of our prior decisions have adopted the fiduciary shield doctrine"). Jahn and Morse argue that the prior decision of the Court was not a "mistake" in that the decision was made in reliance on cases of this Circuit which have applied the fiduciary shield doctrine, and that therefore this motion cannot fall under Rule 60(b)(1).

Alternatively, Jahn and Morse argue that under Rule 60(b)(1), the motion is untimely. A time limitation is placed on motions made under subsection (1): "The motion shall be made ... not more than one year after the judgment, order, or proceeding was entered or taken." The one year period has been described by the Second Circuit as an "absolute one-year bar." *Amoco Overseas Oil Co. v. Compagnie Nationale Algerienne de Navigation*, 605

F.2d 648, 656 (2d Cir.1979). Krueger points out, however, and the Court finds, that because the April 13, 1987 Order dismissed only some of the additional defendants on counterclaims, it was not a final and appealable order. 28 U.S.C. § 1291. *See* C. Wright, *Federal Courts* § 98 at 660 (4th ed. 1983). The one year limitation period for claims under Rule 60(b)(1) therefore cannot begin to run until a final judgment is entered. *See Max M. v. Thompson*, 585 F.Supp. 317, 321 (N.D.Ill.1984). The Court further notes that, although the motion to vacate was filed almost one year after the *Kreutter* decision was issued, the intervening recusal of Judge Walker as well as the delay in the re-assignment of this case present extenuating circumstances under which delay is excusable. The Court thus finds Krueger's motion to have been timely filed.

■ While it has been held that "a change in decisional law is not grounds for relief under 60(b)(6)," *Travelers Indem. Co. v. Sarkisian*, 794 F.2d 754, 757 (2d Cir.), *cert. denied*, 479 U.S. 885, 107 S.Ct. 277, 93 L.Ed.2d 253 (1986), a different result has occurred in Rule 60(b)(1) cases. *See G & T Terminal Packaging Co. v. Consolidated Rail Corp.*, 646 F.Supp. 511 (D.N.J.1986), *aff'd*, 830 F.2d 1230 (3d Cir. 1987), *cert. denied*, 485 U.S. 988, 108 S.Ct. 1291, 99 L.Ed.2d 501 (1988); *Max M. v. Thompson*, 585 F.Supp. 317 (N.D.Ill.1984). The decision of the New York Court of Appeals finding that the fiduciary shield doctrine does not and has never existed in New York is certainly persuasive on this motion to vacate the April Order which relied on that doctrine.

The Court also finds that certain equitable factors weigh in favor of vacating the April Order. Although substantial discovery in this case has been conducted, a motion for summary judgment is pending, *see* discussion *infra*, and thus no trial date had previously been set nor have pre-trial materials been filed. Morse and Jahn are employed by HFT and have been represented by HFT's counsel throughout this litigation. The prejudice to Morse and Jahn in reinstating them as defendants on counterclaims is minimal. In fact, Morse and Jahn suggest an option for Krueger: commence a suit against them in New Hampshire. The result would then be two suits in two separate jurisdictions based on the same facts and the same evidence. Trying Morse and Jahn in the same forum with HFT is much preferable in terms of judicial economy. In addition, should this motion be denied, the finality in litigation theory would be frustrated. Krueger would have to wait for a final judgment to be entered in this case to file an appeal based upon the same grounds as this Rule 60(b) motion.

The Court finds, therefore, that the equities and the subsequent decision of the New York Court of Appeals weigh in favor of granting Krueger's motion to vacate the April 1987 Order of this Court, and Krueger's motion is granted. The request for Rule 11 sanctions against Krueger accordingly is denied.

## II. *Personal Jurisdiction*

■ Having granted Krueger's motion to vacate the April 13, 1987 Order, the Court must now determine whether in light of *Kreutter* personal jurisdiction may be asserted over Jahn and Morse. In considering this issue, which originally arose on a motion to dismiss, the Court must accept as true the allegations of the non-movant, drawing all factual inferences in the light most favorable to it.

It is undisputed that in June 1983, Facit entered into an agreement with Krueger whereby Krueger was given the exclusive right to market the 920 Series in the United States. Shortly thereafter, Facit began marketing the Generation III line. On January 16, 1984, Facit and Krueger entered into a settlement agreement under which Facit agreed to discontinue distributing the Generation III. At the time of these events, Jahn was Facit's president and Morse was General Manager of Facit's Furniture Division. An inference can easily be made, then, that Jahn and Morse were aware of the above transactions.

Morse then left Facit and formed HFT with Kim Fjello–Jensen. Jahn later left Facit and now serves as chairman of HFT's

Board of Directors. HFT continued to distribute the Generation III. Krueger then stopped making payments to Facit under the settlement agreement, resulting in the instant law suit.

The issue of personal jurisdiction concerns Jahn and Morse, both New Hampshire residents, who are alleged to have used information obtained from Krueger to compete unfairly with Krueger, and to have tortiously interfered with contractual relations between Krueger and Facit. Personal service was made upon Morse and Jahn pursuant to Fed.R.Civ.P. 4(e) and New York's long-arm statute, CPLR § 302(a)(1)–(3).

In its April 1987 Order dismissing Jahn and Morse from this action, the Court based its dismissal on the fiduciary shield doctrine. First, the Court stated that "[t]he occasional New York shopping trips made by Jahn and Morse do not provide sufficient contacts to establish New York jurisdiction over these defendants." 657 F.Supp. at 1071. The Court thus did not focus on these trips but on the four annual business trips to New York made by Jahn and Morse.

The Court then analyzed Jahn and Morse's trips to New York on behalf of HFT pursuant to the fiduciary shield doctrine. The burden was placed on Krueger to prove that the case fell within an exception to the fiduciary shield doctrine. In order to overcome the fiduciary shield doctrine, Krueger had to make a *prima facie* showing that HFT was a shell created to further the personal interests of Jahn and Morse. Both Jahn and Morse state in their affidavits in support of the motion to dismiss that during their trips to New York they did the following:

1) met with Privat Banken, a bank with whom HFT has a transfer account and from whom HFT has obtained a loan;

2) met with HFT's independent manufacturing representatives;

3) appeared for deposition, and met with New York counsel, in connection with the litigation brought against Facit in New York'

4) attended several board meetings for Facit in New York;

5) met with the Swedish American Chamber of Commerce; and

6) met with [their] attorneys on this case in New York.

Zissu Aff.Exh. E at ¶ 3 (Jahn Aff.); Exh. F. at ¶ 3 (Morse Aff.). The Court held that Krueger had not met its burden and that the fiduciary shield doctrine prevented Krueger from establishing jurisdiction based on New York business trips by Jahn and Morse on behalf of HFT.

In addition, the Court discussed New York's long-arm statute. The Court analyzed CPLR § 302(a)(3), and found that the attempt to invoke long-arm jurisdiction failed "because Krueger has not shown that Jahn or Morse either 'derives substantial revenue from goods used or consumed in the state' of New York, or 'derives substantial revenue from interstate commerce.' " The Court stated, "[a]s admitted in Krueger's own papers, HFT consummated furniture sales totaling more than $4 million in 1985. HFT currently distributes this furniture through about 15 independent representatives, located across the country." 657 F.Supp. at 1072. In addition, Jahn and Morse own most of HFT's stock. The Court explicitly rejected Krueger's use of revenues earned by HFT in New York and several other states to make its showing. The Court found that "the fiduciary shield doctrine prevents reliance on corporate earnings as a means of asserting long-arm jurisdiction over individual defendants." 657 F.Supp. at 1073.

The Court next examined CPLR § 302(a)(2) and concluded that "even if the torts alleged by Krueger were committed 'within the State' of New York, the long-arm statute does not confer personal jurisdiction over employees or officers who commit tortious acts while acting on behalf of their employers." 657 F.Supp. at 1073. The Court stated that in this case, any tortious interference with contractual relations actually committed by Jahn and Morse could have occurred only while these officers were acting on behalf of Facit and HFT and thus could not form a basis for

jurisdiction over them individually. The Court referred to case law in this Circuit which had concluded that the fiduciary shield doctrine appeared to be alive and well in New York. *See, e.g., Cutco Industries, Inc. v. Naughton,* 806 F.2d 361 (2d Cir.1986); *Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899 (2d Cir.1981).

In the *Kreutter* decision, however, the New York Court of Appeals rejected the fiduciary shield doctrine finding that the legislative history of CPLR § 302 does not suggest that such a doctrine was intended to be implemented, and that the rule is not necessary as a matter of fairness. The court found that the equitable concerns underlying the doctrine are "amply protected by constitutional due process requisites which guarantee that jurisdiction over a nonresident will be sustained only when the demand for his presence is reasonable and consistent with notions of 'fair play and substantial justice.'" 527 N.Y.S.2d at 201, 522 N.E.2d at 46 (citing *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)). Especially applicable to the instant case, the *Kreutter* court found that the individual over whom jurisdiction was sought would undoubtedly be defendant's principal witness and would have to come to New York for that purpose, thus there was no surprise or inconvenience involved in asserting jurisdiction over him.

Jahn and Morse submit that regardless of *Kreutter,* this Court does not have jurisdiction over them. They argue that the claims set forth in the Second Claim for Relief of Krueger's Amended Counterclaims allege only that Jahn and Morse committed a tortious act in their participation in the "establishment" of HFT, a New Hampshire corporation with its principal place of business in New Hampshire. Jahn and Morse ask the Court to rely only on the allegation contained in paragraph 19 of the First Amended Counterclaims, ignoring the additional allegations against them. *See* First Amended Counterclaims ¶¶ 11–13. The Court finds, however, that Krueger has alleged tortious acts touching New York.

Pursuant to CPLR § 302(a)(3), this Court may exercise jurisdiction over a person if he commits a tortious act outside of New York, which action causes injury to a person or property within New York if he:

i. Regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the State, or

ii. Expects or should reasonably expect the act to have consequences in the State and derives substantial revenue from interstate or international commerce; ...

The tortious conduct alleged to have occurred outside of New York is Jahn and Morse's interference with the contract between Facit and Krueger, which action occurred in New Hampshire with the formation of HFT. The harm alleged to have been inflicted within New York is the actual or potential loss of business, damage to customer relations, business reputation and goodwill. HFT completed substantial interstate sales, *see* 657 F.Supp. at 1072, as well as significant New York sales. *See* Zissu Reply Aff.Exh. G. It has been held that revenue derived from interstate commerce is sufficient to meet the 302(a)(3)(ii) requirements in order to fulfill the constitutional limitations of state long-arm jurisdiction. *See Path Instruments Int'l Corp. v. Asahi Optical Co.,* 312 F.Supp. 805, 810 (S.D.N.Y.1970). HFT's sales of over $4 million through 15 independent representatives, *see Facit,* 657 F.Supp. at 1071, is thus sufficient to meet the "derives substantial revenues through interstate commerce" requirement of New York's long-arm statute.

In addition, due to the interstate character of HFT's business, it is not mere conjecture and supposition to find that Krueger has suffered damage due to HFT's sales. New York is a leading commercial center, and this Court may therefore take judicial notice of loss of sales under these circumstances. *See Granada Television Int'l Ltd. v. Lorindy Pictures Int'l, Inc.,* 606 F.Supp. 68, 72 (S.D.N.Y.1984). The revenue made by HFT combined with the New York contacts by Morse and Jahn on behalf of HFT lead to the conclusion that they are

amenable to New York's long-arm statute in light of the fact that New York does not recognize the fiduciary shield doctrine.

■ In asserting personal jurisdiction over Jahn and Morse, the Court finds that due process concerns are more than fulfilled. Jahn and Morse's contacts with New York combined with HFT's New York sales are sufficient to give them "fair warning" that they may be subject to jurisdiction. *See Worldwide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). In addition, due to the fact that Jahn and Morse stood to benefit from HFT's entry into the New York market, it is not unreasonable to subject Jahn and Morse to the flip-side of that benefit. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984). Finally, the allegations in the counterclaims asserted against Jahn and Morse are directly connected with their New York contacts, thus the assertion of jurisdiction does not "offend the traditional notions of fair play and substantial justice." *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 1486, 79 L.Ed.2d 804 (1984) (citations omitted). The protection of the fiduciary shield doctrine having been removed, Jahn and Morse are properly vulnerable to individual liability in a New York forum based on their actions in New York on behalf of HFT.

### III. *Summary Judgment*

■ Facit and the additional defendants on counterclaims ("Movants") move for partial summary judgment on Krueger's counterclaim for breach of the 1984 Settlement Agreement (the "Agreement"). The Movants argue that Krueger's counterclaims depend upon the interpretation of a single word in Paragraph 5 of the Agreement which provides:

5. Facit shall promptly, but no later than January 31, 1984, mail written notice to [Fjello–Jensen ("F–J")], with a copy to Krueger, that effective May 31, 1984, it will terminate its June 14, 1983

Sole Agent Agreement with F–J. Facit and Ericsson will use their best efforts to assist F–J in attempting to find a new, independent distributor for the United States and its territories and possessions, which distributor shall not be Ericsson, Facit or any related company or entity or any of the foregoing's *then-current* officers, directors, or employees, and neither Ericsson nor Facit shall permit such new distributor to promote, market, distribute or sell any of F–J's products under the "Facit" name and they shall request that F–J not use the name Generation III in the future marketing of its product line and explain the basis for such request.

Notice of Motion Exh. B ¶ 5 (emphasis added). The Movants submit that Krueger's counterclaims depend on the interpretation of "then" as used in the phrase "then-current." The Movants interpret "then" to refer to the time when a new distributor for the Generation III line is found for F–J, while Krueger interprets the word to refer to the date on which the Agreement was signed, January 16, 1984.

Krueger's counterclaim is based on the fact that on March 1, 1984, the Danish Company F–J and Morse, Facit's former General Manager of its furniture division, established HFT to be the new distributor of Generation III. HFT purchased the assets of Facit's furniture division and eventually employed people who had been employed in Facit's furniture division. Jahn, the President of Facit, resigned from Facit in November 1984 and became chairman of HFT in January 1985. Based on Krueger's interpretation of "then," Morse, Jahn and other former Facit employees breached the Agreement when they became employees of HFT.

The parties are in agreement that when the language in a contract is unambiguous, the Court may decide the meaning of the contract on a motion for summary judgment. *See Leslie Fay, Inc. v. Rich,* 478 F.Supp. 1109, 1113–14 (S.D.N.Y.1979). The parties do not agree, however, whether there exist two "fairly reasonable interpretations" of the Agreement, thus presenting a genuine issue of material fact, enabling the Court to consider parol evidence. *See*

*Schiavone Constr. Co. v. County of Nassau,* 717 F.2d 747, 751 (2d Cir.1983).

The Movants submit that there is only one reasonable interpretation of the Agreement: that the only people prevented from marketing the Generation III line were those employed by Facit at the time an independent distributor was found for F–J to sell Generation III. Krueger counters that the Agreement "must ... be interpreted as precluding all officers, directors and employees as of the date of the agreement (January 16, 1984) from ever distributing the Generation III." Opp.Mem. at 20.

For the reasons set forth below, the Court is unable to accept either interpretation as "fairly reasonable" and therefore finds that a material issue of fact exists over its interpretation, making summary judgment inappropriate. *See Hunt Ltd. v. Lifschultz Fast Freight, Inc.,* 889 F.2d 1274, 1277 (2d Cir.1989); *Garza v. Maine Transport. Lines, Inc.,* 861 F.2d 23, 26 (2d Cir.1988).

Under the Movants' interpretation, the employees of Facit at the time of the signing of the Agreement—including those involved in negotiating the terms of the Agreement—were free to leave Facit the next day and form a new company, namely HFT, to distribute the Generation III line. The Court finds this interpretation to be inconsistent with the rest of the Agreement, pursuant to which Krueger withdrew its suit against Facit in return for Facit's agreement to stop selling the F–J's Generation III line, and to assist F–J in finding a "new, independent distributor" for the Generation III line. The new distributor was explicitly not to be "Ericsson, Facit or any related company or entity." Notice of Motion, Exh. B ¶ 5. The fact that HFT appears to have maintained ties with Facit indicates that the Generation III line was being distributed by a "related" company. Drawing all inferences in favor of the non-movant, *see Ramseur v. Chase Manhattan Bank,* 865 F.2d 460, 465 (2d Cir.1989), the Court finds it highly unlikely that Krueger intended for such a possibility to occur.

█ On the other hand, the Court cannot accept Krueger's interpretation of the "then-current" language. Krueger would have the Court find a perpetual restrictive covenant against anyone employed by Facit as of the date of the Agreement from selling the Generation III line ever in their lives. The Movants submit, and the Court finds, that such an anticompetitive covenant covering a post-employment period should not be found absent express language to that effect. *See American Broadcasting Cos. v. Wolf,* 52 N.Y.2d 394, 406, 438 N.Y.S.2d 482, 488, 420 N.E.2d 363, 369 (1981).

The Court declines at this time to consider extrinsic evidence submitted by the parties on the issue of intent. Intent is relevant to other issues in this case, such as determining the propriety of HFT's formation and subsequent marketing of the Generation III line, which are at the heart of Krueger's counterclaims. Moreover, it would be an abuse of this Court's discretion to do as Movants suggest and ignore the circumstances surrounding the formation of the Agreement and the transactions of former Facit employees. These issues are best determined at trial during which the credibility of witnesses can be observed and judged by the trier of fact.

## CONCLUSION

Based on the foregoing discussion, the Movants' motion for partial summary judgment is denied. In addition, Krueger's 60(b) motion to vacate is granted, and personal jurisdiction is properly asserted over defendants on counterclaims Jahn and Morse. The parties are to be ready for trial on May 1, 1990, and the Court's pre-trial requirements are attached hereto.

SO ORDERED.

## ATTACHMENT

UNITED STATES DISTRICT COURT

CHAMBERS OF

JUDGE JOHN F. KEENAN

UNITED STATES COURTHOUSE

FOLEY SQUARE

NEW YORK, N.Y. 10007

PRE–TRIAL REQUIREMENTS OF
JUDGE JOHN F. KEENAN

Date: February 26, 1990

**1276**

Re: *Facit, Inc. v. Krueger, Inc.*, 88 Civ. 1268

The above case has been given a ready for trial date of May 1, 1990. As of that date, you must be ready to proceed to trial on 48 hours notice from the Court.

Chambers will notify counsel as far in advance as possible of a definite, firm trial date, when one is selected by the Court. Should counsel for either party find that circumstances have changed with respect to the readiness of the case for trial, or for extraordinary reasons additional advance notice of a firm trial date is needed, counsel are directed to advise the Court in writing.

The following steps should be taken in connection with ready for trial status:

1. A joint pre-trial order is directed to be filed at least two weeks prior to the ready for trial date. The joint pre-trial order is to contain the following:

(a) stipulated facts

(b) contentions of the parties as to disputed facts

(c) list of evidence to be submitted at trial

(d) list of witnesses to be called at trial

(e) legal issues to be decided by the Court

(f) estimated time for presentation of case by each side

(g) whether trial is to be heard by a jury or the Court.

In the event the parties cannot agree upon a joint pre-trial order, separate pre-trial orders shall be submitted by the same date described above.

2. A pre-trial memorandum setting forth the relevant statutory and case law shall be submitted by each party by the same date described above. Each party's version of the facts, as they bear upon the relevant law, shall be included in the pre-trial memoranda.

3. All exhibits shall be pre-marked. Counsel shall exchange exhibits prior to trial. Plaintiff's exhibits shall be marked with numerals, and defendant's with letters. Whenever possible, the parties should stipulate as to authenticity and admissibility of exhibits. Pre-marked exhibits shall be submitted to the Court the day prior to the firm trial date. A list of exhibits should be supplied to the Court Clerk, as well as to the Court. All exhibits on such list shall be numbered in conformity with the joint pre-trial order.

4. Proposed voir-dire questions shall be submitted to the Court the day prior to the firm trial date.

5. Requests to charge shall be submitted no later than the commencement of trial in a jury case. Each request shall specify the authority for the proposed charge.

Counsel should have copies of any deposition transcripts which are to be read in a jury case. In a bench trial, counsel should mark the portion of each deposition transcript to be offered in evidence, and supply copies to the court reporter.

6. Counsel are expected to have all necessary witnesses on hand to commence and continue trial. The Court will not commit itself to wait for witnesses.

7. In a case to be tried by the Court, a schedule for submissions of proposed findings of fact and conclusions of law shall be set at the time of trial.

8. Failure to comply with these directions may result in dismissal or the entry of a default judgment.