OPINION OF THE COURT
Simons, J.
Plaintiff, a resident of Hamburg, New York, sought to invest *463 in a Texas oil venture and for that purpose he delivered $70,000 to defendant Brian McFadden and Company, Inc., a Texas corporation which markets oil investments through its office in New York City. After various transfers involving defendants McFadden Oil Corporation and Harmony Drilling Company, Inc., both Texas corporations, and defendant Eugene Burch Downman, Jr., a Texas resident, McFadden Company eventually paid the balance of plaintiffs funds, after commissions, to defendant Harmony, supposedly to buy an oil rig for plaintiff which was to be leased back to Harmony. Plaintiff received nothing for his money, not even confirmation of its delivery, and believing himself cheated he instituted this action to recover his $70,000 together with incidental and punitive damages. Plaintiffs complaint alleges causes of action in fraud, conversion, breach of contract and related claims. He seeks to acquire jurisdiction over the Texas defendants pursuant to CPLR 302 (a) (1). That subdivision provides that "a court may exercise personal jurisdiction over any non-domiciliary * * * who in person or through an agent * * * transacts any business within the state”.
 The Texas defendants moved to dismiss the complaint for want of jurisdiction and Supreme Court denied their motions after a hearing. The Appellate Division modified, sustaining jurisdiction over McFadden Oil but dismissing the actions against defendants Downman and Harmony. It held Downman was not subject to jurisdiction because he was acting on behalf of McFadden Oil in the transaction and, therefore, was protected by the fiduciary shield doctrine. It dismissed the action against defendant Harmony because it found plaintiff failed to establish Harmony had sufficient contacts with New York. We granted plaintiff leave to appeal so that we could review the jurisdictional questions presented and we now reverse. Plaintiff established that Downman and Harmony transacted business in this State through an agent, McFadden Company, and that his cause of action arose from that transaction. We hold further that the fiduciary shield doctrine cannot be invoked to insulate defendant Downman from personal jurisdiction. Accordingly, the motion to dismiss should be denied as to both defendants.
I
In 1972, Downman, Brian McFadden and their counsel, *464 Norman Jones, negotiated an arrangement whereby McFadden would procure funds for investment in Downman’s Texas oil producing operations. They formed two corporations for the purpose: defendant Brian M. McFadden and Company, Inc., which would market the investment opportunities and defendant McFadden Oil Corp., which would acquire and manage the Texas oil properties. McFadden Company was given the right of first refusal to market all McFadden Oil’s opportunities but if it chose not to exercise its right for a specific project, McFadden Oil was free to finance that endeavor on its own or to offer the investment opportunity to another interested party. More than 50% of the oil company’s opportunities were sold to McFadden Company, however, and in such cases, title in the opportunity and entitlement to the net profits from the venture vested with McFadden Company. It derived the capital to purchase these opportunities by selling participation shares to investors, who, in turn, received interests in particular ventures proportionate to their investment. The joint venture agreement between McFadden Company and McFadden Oil provided that when McFadden Company sold shares in McFadden Oil’s ventures it was to retain a 22% commission from the investor’s contribution and forward the remaining 78% to McFadden Oil. As each venture progressed, McFadden Oil issued dividend checks to the investors holding participation shares, as directed by McFadden Company, and also issued a newsletter to them reviewing the status of their investment. From 1975 to 1982, McFadden Company allegedly sold over $5,000,000 in participating interests in McFadden Oil operations.
Although both McFadden Company and McFadden Oil were incorporated in Texas, McFadden Company established its principal office in New York and is licensed to do business here. McFadden Oil listed McFadden Company’s New York office as its own New York address, and McFadden Company listed McFadden Oil’s Texas office as its Texas address. At the time of incorporation, McFadden Company and McFadden Oil shared the same officers and directors, but the corporations have always had different shareholders. At the time of these transactions, Downman had no office or ownership in McFadden Company but he exercised management control of McFadden Oil and he had a direct ownership interest in it through personally held shares and also an indirect ownership interest in it through another company he owned in part which held *465 McFadden Oil shares. Defendant Harmony Drilling Co., Inc., was incorporated in Texas in 1977 and it is owned exclusively by Downman, his wife and his infant daughter.
Over the years, plaintiff invested $145,000 in participation shares marketed by McFadden Company. He had twice met Downman in Texas, once to discuss this transaction, but he made all his investments through McFadden Company. In 1977, plaintiff decided to invest additional moneys. Unlike prior transactions, however, this investment did not involve the acquisition of participation shares. Instead, defendants proposed a financing device they apparently had not used before. Plaintiff was to purchase an oil rig from McFadden Oil and then lease the equipment back to it, or so he believed. Plaintiff tendered $70,000 for the purchase to McFadden Company’s Buffalo area representative, defendant Mumbach. Mumbach deducted a $6,000 commission and then sent the balance of $64,000 to defendant McFadden Company. Although the sale of participation shares — the type of transaction covered by the joint venture agreement between McFadden Oil and McFadden Company — was not involved, McFadden Company kept 22% of the $64,000 and sent a check for the remaining $49,990 to McFadden Oil to purchase the oil rig. McFadden Oil did not own the rig, however; it was owned by Harmony. Accordingly, someone in the office of McFadden Oil, falsely stating that Harmony was a subsidiary of McFadden Oil, directed McFadden Company to issue a new instrument payable to Harmony. McFadden Oil either destroyed or returned the original check naming it payee and McFadden Company issued a new check payable to Harmony.
Although the evidence did not directly establish who instructed McFadden Company to issue a new check, the trial court drew the inference that it was Downman because he knew of plaintiff’s investment in the oil rig and he was in constant communication with McFadden Company at the time it was being processed. Indeed, Downman acknowledged his involvement with the leasing of the rig and the many problems he was experiencing with the arrangement in memoranda sent to Brian McFadden after the check was sent to Harmony, memoranda which indicated that Downman was acting on behalf of Harmony, explained Harmony’s inability to pay the amounts due under the leaseback, and confirmed to Brian McFadden that McFadden Company’s marketing of the rig had been on Harmony’s behalf.
*466 II
Defendant Downman argues that jurisdiction cannot be acquired over him because he did not personally transact any business in New York State and jurisdiction cannot be predicated on his activities as the corporate agent of either McFadden Oil or Harmony. Jurisdiction over him cannot be predicated on anything he did for McFadden Oil, he maintains, because although it transacted business in New York, plaintiff's claim did not arise out of that business but out of a leaseback investment with Harmony Drilling Company. Jurisdiction cannot be acquired over him because of his activities on behalf of Harmony, he maintains, because Harmony did not transact any business in this State. Downman contends, further, that even if McFadden Company’s activities can toe attributed to McFadden Oil or Harmony and support a finding that they transacted business in New York through an agent, he is insulated from jurisdiction under the fiduciary shield doctrine because he was not acting in his individual capacity when participating in the leaseback transaction but on behalf of a corporation.
Constitutional due process requires that a court have a jurisdictional basis to exercise its powers over a party. Customarily this basis is supplied by the party’s presence within the court’s geographical jurisdiction. With the growth of national markets for commercial trade and technological advances in communication and travel systems, however, an enormous volume of business may be transacted within a State without a party ever entering it. Recognizing this, the Supreme Court has expanded the permissible powers of States to obtain personal jurisdiction over nondomiciliaries. So long as a party avails itself of the benefits of the forum, hits sufficient minimum contacts with it, and should reasonably expect to defend its actions there, due process is not offended if that party is subjected to jurisdiction even if not "present” in that State (see, McGee v International Life Ins. Co., 355 US 220, 222-223; see also, Burger King Corp. v Rudzewicz, 471 US 462; World-Wide Volkswagen Corp. v Woodson, 444 US 286, 292; International Shoe Co. v Washington, 326 US 310). Specifically, in the International Shoe case the court held that "the privilege of conducting activities within a state * * * may give rise to obligations, and, so far as those obligations arise out of or are connected with the activities within the state, a procedure which requires [a party] to respond to a suit brought to *467 enforce them can, in most instances, hardly be said to be undue” (id., at 319 [emphasis added]).
New York’s long-arm statute, CPLR 302, was enacted in response to those decisions. CPLR 302 (a) (1), the provision in issue on this appeal, authorizes the court to exercise jurisdiction over nondomiciliaries for tort and contract claims arising from a defendant’s transaction of business in this State. It is a "single act statute” and proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant’s activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted (see, Reiner & Co. v Schwartz, 41 NY2d 648, 651-652; Parke-Bernet Galleries v Franklyn, 26 NY2d 13, 16-17; cf., Talbot v Johnson Newspaper Corp., 71 NY2d 827; and McGowan v Smith, 52 NY2d 268, 272).
In this case, plaintiff did not deal directly with McFadden Oil, Harmony or Downman. He dealt with McFadden Company in New York, and the question is whether McFadden Company was acting as the agent of the Texas defendants so that its actions are attributable to them and support New York’s assertion of jurisdiction over them. Plaintiff need not establish a formal agency relationship between defendants and McFadden Company (see, Parke-Bernet Galleries v Franklyn, supra, at 19; Elman v Belson, 32 AD2d 422, 426). He need only convince the court that McFadden Company engaged in purposeful activities in this State in relation to his transaction for the benefit of and with the knowledge and consent of the Texas defendants and that they exercised some control over McFadden Company in the matter (see, Lupton Assocs. v Northeast Plastics, 105 AD2d 3, 7; Cato Show Print. Co. v Lee, 84 AD2d 947, 949, appeal dismissed 56 NY2d 953; East N. Y. Sav. Bank v Republic Realty Mtge. Corp., 61 AD2d 1001, 1002; CutCo Indus. v Naughton, 806 F2d 361, 366).
A
Because Downman relies primarily on the "fiduciary shield doctrine” and the Appellate Division held it was available to defeat jurisdiction over him, we address it first. That doctrine provides that an individual should not be subject to jurisdiction if his dealings in the forum State were solely in a corporate capacity. It is based upon the notion that it is unfair to subject a corporate employee personally to suit in a foreign *468 jurisdiction when his only contacts with that jurisdiction have been undertaken on behalf of his corporate employer (see, Marine Midland Bank v Miller, 664 F2d 899, 902). In CPC Intl. v McKesson Corp. (70 NY2d 268, 287), the only case in which we have considered the doctrine, plaintiff sued corporate officers for committing a tort in this State and relied on CPLR 302 (a) (2) to obtain jurisdiction over them. Although we recognized that fiduciary shield had been applied by other courts interpreting New York law, we refused to invoke it to insulate corporate agents from long-arm jurisdiction. In CPC we left open the question whether the doctrine applies to other provisions of the long-arm statute. For the reasons which follow we conclude that it does not.
The phrase "fiduciary shield doctrine” was first used by the United States Court of Appeals in United States v Montreal Trust Co. (358 F2d 239, cert denied 384 US 919), a diversity case in which the Second Circuit applied New York’s jurisdictional rules. In doing so the court construed our long-arm statute to require the application of the fiduciary shield doctrine based upon its reading of Boas & Assocs. v Vernier (22 AD2d 561). In Boas, however, plaintiff was suing on a contract and the Appellate Division merely found that, as a matter of substantive law, no claim could be asserted against an individual nonresident defendant whose only contact with New York was his execution of a contract here on behalf of his corporate employer. That was so, the Boas court noted, because one who executes a contract on behalf of a corporation without also signing it in his individual capacity is not personally obligated under the agreement (id., at 563, citing Savoy Record Co. v Cardinal Export Corp., 15 NY2d 1; Salzman Sign Co. v Beck, 10 NY2d 63). The Boas court did not address whether the defendant was amenable to jurisdiction in the New York courts and thus it provides no basis for development of the jurisdictional doctrine the Second Circuit attributed to it. Some courts have also found a suggestion in Yardis Corp. v Cirami (76 Misc 2d 793) that the fiduciary shield doctrine had been adopted in this State. Yardis did not involve interpretation of New York’s long-arm statute, however; it rested on constitutional principles.
The Boas and Yardis decisions appear to supply the only basis for Federal court determinations that the fiduciary shield doctrine has been accepted in New York but, remarkably, application of the doctrine has proliferated and it has been accepted by several Federal courts and by some Depart *469 ments of the Appellate Division (see, CutCo Indus. v Naughton, 806 F2d 361, 367, supra; Sheldon v Kimberly-Clark Corp., 105 AD2d 273 [2d Dept], appeal dismissed 65 NY2d 691; but see, Hasbro Bradley, Inc. v Coopers & Lybrand, 121 AD2d 870 [1st Dept] [rejecting the rule]; Laurenzano v Goldman, 96 AD2d 852 [2d Dept] [refusing to apply doctrine]; and see generally, 1 Weinstein-Korn-Miller, NY Civ Prac 302.6a, at 3-107; Sponsler, Jurisdiction over the Corporate Agent: The Fiduciary Shield, 35 Wash & Lee L Rev 349, 352-354 [1978]).
In applying the fiduciary shield doctrine in this case, the Appellate Division cited to some of these decisions and also to our decision in Laufer v Ostrow (55 NY2d 305). The principal issue in Laufer, however, was whether the corporate defendant had "done business” in New York sufficient to support jurisdiction over it under CPLR 301. Neither long-arm jurisdiction nor the fiduciary shield doctrine was involved because an entity doing business in New York under CPLR 301 is deemed present in the State and long-arm jurisdiction need not be invoked. The Laufer court did note that the individual defendant was not subject to long-arm jurisdiction under CPLR 302. This was not because he was protected by the fiduciary shield, however, but because the claim was for a conversion which took place outside the State and no New York injury resulting from the defendant’s tortious conduct was alleged (see, Laufer v Ostrow, supra, at 313-314, citing Fantis Foods v Standard Importing Co., 49 NY2d 317, 326-327; see also, 1 Weinstein-Korn-Miller, op. cit, fl 302.06a, at 3-109 -3-110).
Thus, none of our prior decisions have adopted the fiduciary shield doctrine and we now address whether we should do so in this case. The analysis differs somewhat from that in CPC Intl. v McKesson Corp. (70 NY2d 268, supra) which construed CPLR 302 (a) (2) and involved corporate officers charged with fraudulent misrepresentations made during a meeting in New York State. In this case, Downman, the corporate agent over whom jurisdiction is sought, has not physically entered New York and jurisdiction has been asserted over him because he acted on behalf of nondomiciliary corporations transacting business in New York. Downman claims that under these circumstances equity requires the application of the fiduciary shield because it is unfair to bring him into New York’s courts when, under familiar principles of contract and corporate law, he may not be substantively liable unless the corporate veil is pierced or there is clear evidence that he intended to be *470 personally bound. He contends that unless the doctrine is applied, any employee of a nondomiciliary corporation could be sued personally in New York based solely upon acts of the corporation which employed him.
Defendant’s argument addresses substantive liability and the fact that a corporation is liable for acts of its corporate employee is not relevant to the matter now before us. Liability may be considered only after it is decided, on the basis of CPLR 302, that the defendant is subject to the in personam jurisdiction of our courts (Longines-Wittnauer Watch Co. v Barnes & Reinecke, 15 NY2d 443, 460, cert denied sub nom. Estwing Mfg. Co. v Singer, 382 US 905; and see generally, Siegel, NY Prac § 92; 1 Weinstein-Korn-Miller, op. cit., |J 302.06a, at 3-110). Moreover, plaintiffs objective is more limited than Downman would have us believe. He seeks to acquire jurisdiction over an individual who was a primary actor in the transaction with him in New York, not some corporate employee in Texas who played no part in it (cf., Calder v Jones, 465 US 783, 789-790 [where distinction was drawn between corporate employee who knowingly contributed to the wrong and an employee who played a collateral role or acted without guilty knowledge]). Downman represented two corporations during their participation in purposeful corporate acts in this State and if he acted improperly in representing them, the fact that he acted for one or both of the corporations should not necessarily relieve him from responding to plaintiffs claims against him.
Turning then to the interpretation of CPLR 302, we determine that it is neither necessary nor desirable to adopt the fiduciary shield doctrine in New York. Nothing in the statute’s language or the legislative history relating to it suggests that the Legislature intended to accord any special treatment to fiduciaries acting on behalf of a corporation or to insulate them from long-arm jurisdiction for acts performed in a corporate capacity.
Nor is the rule necessary as a matter of fairness. The equitable concerns which motivated development of the doctrine are amply protected by constitutional due process requisites which guarantee that jurisdiction over a nonresident will be sustained only when the demand for his presence is reasonable and consistent with notions of " 'fair play and substantial justice’ ” (International Shoe Co. v Washington, 326 US 310, 316, supra). Indeed, the Supreme Court has addressed the *471 fiduciary shield doctrine under circumstances similar to those in the case before us and held that it is constitutionally permissible to subject an individual participating in a transaction in a foreign State to long-arm jurisdiction even though his contacts with the forum were made in a corporate capacity (Calder v Jones, 465 US 783, supra; Keeton v Hustler Mag., 465 US 770; 1 Weinstein-Korn-Miller, op. cit., K 302.06a, at 3-102— 3-104). These protections are further amplified by New York’s long-arm statute, which does not confer jurisdiction in every case where it is constitutionally permissible (see, e.g., CPLR 302 [a] [2], [3] [defamation cases]; see generally, Banco Ambrosiano v Artoc Bank & Trust, 62 NY2d 65, 71; Siegel, NY Prac §85).
This case is a good example of why the doctrine is not necessary to avoid inequitable results. Plaintiff has obtained jurisdiction over McFadden Oil and Downman will undoubtedly be its principal witness and will have to come to New York for that purpose. That being so, the inconvenience he faces if made a party to the suit individually is minimal and, as a result, notions of fairness do not require us to shield him from the reach of the long-arm statute. Inasmuch as the constitutional and statutory safeguards sufficiently alleviate the equitable concerns posed by long-arm jurisdiction, there is "no convincing reason why the mere fact of corporate employment should alter the jurisdictional calculus” (Koenig, Personal Jurisdiction and the Corporate Employee: Minimum Contacts Meet the Fiduciary Shield, 38 Stan L Rev 813, 830; accord, Sponsler, Jurisdiction over the Corporate Agent: The Fiduciary Shield, 35 Wash & Lee L Rev 349, 364; McLaughlin, Supplementary Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, C302:3, 1988 Cum Ann Pocket Part, at 43-47, 49-50).
Nor is the rule desirable as a matter of public policy. Quite the contrary, it has been soundly condemned by writers for unfairly prejudicing plaintiffs who seek relief against defendants conducting affairs in this State (see, e.g., Sponsler, op. cit.; 1 Weinstein-Korn-Miller, op. cit., [[ 302.06a; Koenig, op. cit.; McLaughlin, Supplementary Practice Commentaries, McKinney’s Cons Laws of NY, op. cit.) and the courts which recognize the doctrine have created several exceptions to avoid perceived injustices resulting from its application. For example, courts have refused to apply it where the corporate agent stood to gain personally from activities he conducted on behalf of the corporation or was not faithfully acting in the *472 corporation’s interests (see, Marine Midland Bank v Miller, 664 F2d 899, 903, supra; United States v Montreal Trust Co., 358 F2d 239, 243, supra), an exception of immeasurable breadth because rarely, if ever, does a corporate agent not derive some benefit from acting on behalf of his principal (see, Koenig, Personal Jurisdiction and the Corporate Employee: Minimum Contacts Meet the Fiduciary Shield, 38 Stan L Rev 813, 826 [1986]). At least one court has held, as have we, that the doctrine should not be invoked where the corporate employee committed a tort in the forum State while acting on behalf of his principal (see, CPC Intl. v McKesson Corp., 70 NY2d 268, 287-288, supra; Merkel Assocs. v Bellofram Corp., 437 F Supp 612, 618-621). Another has ruled that the doctrine should be invoked only if the corporate agent was never physically present in the forum State (see, Columbia Briargate Co. v First Natl. Bank, 713 F2d 1052, 1060-1065, cert denied sub nom. Pearson v Columbia Briargate Co., 465 US 1007). Finally, it has been held that if the particular long-arm statute under consideration was designed to provide personal jurisdiction to the full extent permissible under the Constitution, the doctrine should not be adopted (id., at 1057). That the application of this purportedly equitable rule has required the courts to develop so many exceptions to it to avoid inequitable results suggests that the foundation of the rule is unsound, or at a minimum, that the rule is unworkable.
Accordingly, we hold the fiduciary shield rule is not available to defeat jurisdiction under the New York long-arm statute and turn to the factual determinations made below.
B
Because the sale-leaseback was portrayed to plaintiff as a transaction with McFadden Oil, jurisdiction over it has been sustained by both courts below and this aspect of their rulings is not contested on appeal.
As to defendant Harmony, we determine that the hearing court’s finding that it transacted business in New York more nearly comports with the weight of the evidence in the record than does the Appellate Division’s contrary finding.* *473 Jurisdiction over Harmony was properly sustained because Harmony used McFadden Company in New York to secure plaintiffs investment, it paid McFadden Company for that service, and it received the balance of the invested funds directly from McFadden Company when it issued a check payable to Harmony.
Harmony and Downman maintain that the conduct of McFadden Company cannot be attributed to them because there was no agency arrangement between them and McFadden; it did not even know it was representing Harmony. If McFadden Company had marketed the rig with full knowledge that it was acting for Harmony, however, an agency relationship between the two would unquestionably have existed and there is no reason to hold that one did not exist here because Harmony and Downman used Downman’s relationship with McFadden Oil to conceal the truth from the New York entity acting for them.
It is irrelevant, therefore, whether Downman acted on behalf of Harmony or McFadden Oil with respect to plaintiffs transaction. Because we have rejected the fiduciary shield doctrine jurisdiction can be exercised over him for his actions on behalf of either corporation.
Accordingly, the order of the Appellate Division should be reversed, with costs, and the motion to dismiss complaint as against defendants Downman and Harmony Drilling Co., Inc., denied.
Chief Judge Wachtler and Judges Kaye, Alexander and Bellacosa concur; Judges Titone and Hancock, Jr., taking no part.
Order reversed, etc.

 Insofar as defendant Harmony is concerned, it contends the Appellate Division made a new factual finding that there was no direct nexus between Harmony and New York because Harmony only received the proceeds of the sale of the oil rig after a check for the sale was sent to McFadden Oil in *473 Texas. In other words, the Appellate Division may have concluded that Harmony was paid by McFadden Oil for the rig after the check for it was sent by McFadden Company to McFadden Oil. Although it is not clear whether the Appellate Division made such a finding, assuming it did and that it reversed the finding of the hearing court on this point, it remains for us to decide whether the finding of the hearing court or the Appellate Division more nearly comports with the weight of the evidence (see, CPLR 5501 [b]; Matter of Louise E. S. v W. Stephen S., 64 NY2d 946; Matter of Layton v Foster, 61 NY2d 747).