YURMAN DESIGNS, INC., Plaintiff,

v.

A.R. MORRIS JEWELERS, L.L.C. and Doe I, Whether singular or plural, the entity or those entities who or that is a participant in the Yurman authorized retailer program believed to have sold Yurman products to A.R. Morris Jewelers, Defendants.

No. 98 Civ. 8312(RWS).

United States District Court, S.D. New York.

March 4, 1999.

Sidley & Austin, New York City (Maxim H. Waldbaum, of counsel), for Plaintiff.

Rand Rosenzweig Smith Radley Gordon & Burstein, New York City (Charles L. Rosenzweig, of counsel), for Defendants.

## OPINION

SWEET, District Judge.

Plaintiff Yurman Design Inc. ("Yurman") has moved for a preliminary injunction, pursuant to Rule 65 of the Federal Rules of Civil Procedure, to prohibit defendant A.R. Morris Jewelers, L.L.C. ("Morris") from: (i) continuing their attempts to "destroy" Yurman's Authorized Retailer Program, brand name and business reputation; (ii) soliciting, promoting and selling in an unauthorized manner DAVID YURMAN jewelry products; (iii) inducing Yurman's authorized retailers to breach their contractual agreements with Yurman; (iv) interfering with and intentionally harming Yurman's business relationships with its authorized retailers; (v) engaging in unfair competition activities; (vi) appropriating Yurman's proprietary interests; and (vii) intentionally harming Yurman without excuse or justification. Yurman also has moved for an order, pursuant to Federal Rules of Civil Procedure 26(d), 30(a), 33(a) and 34(b), permitting expedited discovery.

For the reasons set forth below, Yurman's motions are denied.

### The Parties

Plaintiff Yurman is a corporation organized and existing under the laws of the State of New York with its principal place of business located at 501 Madison Avenue, New York, New York 10022. Yurman is engaged in the design, manufacture, distribution and sale of fine jewelry.

Defendant Morris is a Delaware limited liability company located at 802 N. Market Street, Wilmington, Delaware, 19801.

### Prior Proceedings

Yurman filed his complaint in this action on November 23, 1998, alleging unfair competition under the Trademark Laws of the United States, 15 U.S.C. § 1051 et seq.; copyright infringement under 17 U.S.C. § 101 et seq.; deceptive trade practices, fraudulent inducement, breach of contract, tortious interference with contract, tortious interference with business relations and misappropriation under the laws of the State of New York.

Yurman filed the instant motion by order to show cause on November 24, 1998. Oral argument was heard on December 9, 1998, at which time the motion was deemed fully submitted.

### Facts

More than eighteen years ago, David Yurman, a jewelry designer, and his wife Sybil, built the DAVID YURMAN brand name for their "unique, elegant, and creative jewelry products." (Yurman Decl. ¶ 4). Beginning in or about 1982, Yurman began designing, manufacturing, promoting, marketing and selling a line of jewelry products that incorporate a cable design together with other elements. Yurman is widely known for many signature collections such as, THE CABLE COLLECTION, THE HAMPTON CABLE COLLECTION and the VENETIAN COLLECTION. The CABLE COLLECTION for example, includes bracelets, necklaces, rings and earrings. It is named for its cable design comprising solid sterling-silver or gold tubes twisted into a helix.

Since the introduction of its cable design, Yurman has spent enormous amounts of time, resources and effort to cultivate a solid relationship for producing jewelry of the finest design, materials and craftsmanship. Yurman has also spent more than a million dollars in advertising its jewelry products. According to Yurman, its name has become "nearly synonymous" with the cable motif. (Complaint ¶ 14).

To protect its jewelry designs and the integrity, good will, and business reputation, Yurman sought and received federal trademark registration for its brand name DAVID YURMAN and the names of its jewelry collections, copyright registrations for its original designs, and utility and design patents for its novel jewelry designs and inventions.

To further protect its image, Yurman has established an Authorized Retailer

Program (the "Program") which imposes certain conditions on authorized retailers. Through the Program, Yurman controls how and where it promotes and sells DAVID YURMAN jewelry in order to protect "the achieved image of exclusivity and luxury." (Yurman Decl. ¶ 12). Yurman has chosen to sell its jewelry products in stores such as Saks Fifth Avenue, Neiman Marcus and Bloomingdale's. Yurman has also given exclusive rights to approximately two hundred (200) "upscale" jewelry boutiques across the United States.

Under the Program, transshipment of DAVID YURMAN jewelry products from one retailer to another retailer is expressly prohibited. Authorized retailers of DAVID YURMAN jewelry products cannot be "middlemen" or "wholesalers." To be eligible as a participant in the Program, a retailer must, among other requirements, agree to adhere to the advertising guidelines, operational terms and policies established by Yurman.

Between 1991 and 1995, Morris was an authorized retailer of Yurman merchandise. According to Morris, Yurman never complained about its operations. However, in 1995, Yurman unilaterally terminated Morris as an authorized retailer.

Yurman alleges that Morris has been selling DAVID YURMAN jewelry products without authorization at its store located at 802 N. Market Street in Wilmington Delaware. Yurman maintains that as part of its "scheme," Morris induced an unnamed authorized retailer of DAVID YURMAN products to breach its Authorized Retailer Agreement with the plaintiff and transship DAVID YURMAN jewelry to Morris. Upon receiving notice of this "scheme" from its private investigator, Michael McCloskey, Yurman's counsel, in a letter dated July 10, 1998, requested that Morris cease and desist from further unauthorized sale of DAVID YURMAN products in any way. Yurman avers that Morris "blatantly ignored" plaintiff's request. (McCloskey Decl. ¶¶ 10–11; Yurman Decl. ¶ 21).

Morris maintains that after its termination by Yurman, it was contacted by Cindy Earl ("Earl") of Cindy Earl Fine Jewelry, an authorized Yurman retailer in Nashville, Tennessee. Earl asked Albert R. Morris if he was interested in purchasing any Yurman merchandise. Morris claims that to "limit the damage to customer relations from having been terminated without notice by Yurman, A.R. Morris purchased Yurman merchandise from Ms. Earl." (A.R. Morris Decl. ¶ 7). According to Morris, Earl is the only source from which it ever purchased any Yurman merchandise after it was terminated by Morris. Morris' last purchase of Yurman merchandise from Earl was in 1996, the year in which Earl was terminated as an authorized retailer by Yurman. Morris avers that since 1996, it has not purchased any Yurman merchandise from any source.[1] Further, Morris asserts that since being terminated, it has never represented itself as an authorized Yurman retailer nor has it run any advertisements that include the Yurman name or Yurman merchandise. Morris contends that it is selling legitimate YURMAN goods in an appropriate and entirely legal manner.

### Discussion

### I. This Court Lacks Jurisdiction Over Morris

■ Before entering an order of preliminary injunction, jurisdiction over the defendant must be "clearly established." *Weitzman v. Stein*, 897 F.2d 653, 658–59 (2d Cir.1990). "A prima facie showing of jurisdiction will not suffice ... where a plaintiff seeks preliminary injunctive relief. A court must have in personam jurisdiction over a party before it can validly enter even an interlocutory injunction against him." *Visual Sciences, Inc. v. Integrated*

---

1. Morris acknowledges that it did acquire one set of Yurman earrings since 1996 through a trade-in from a customer.

*Communications, Inc.,* 660 F.2d 56, 59 (2d Cir.1981).

■ The plaintiff bears the ultimate burden of establishing jurisdiction over a defendant by a preponderance of the evidence. *See Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,* 763 F.2d 55, 57 (2d Cir. 1985); *Levisohn, Lerner, Berger & Langsam v. Medical Taping Systems, Inc.,* 10 F.Supp.2d 334, 338–39 (S.D.N.Y.1998). Personal jurisdiction over a non-resident defendant is determined by the law of the jurisdiction in which the federal court sits. *See Bensusan Restaurant Corp. v. King,* 126 F.3d 25, 27 (2d Cir.1997). Accordingly, assessment of whether New York's Civil Practice Law and Rules ("CPLR") provides for jurisdiction must be made. *See* N.Y. C.P.L.R. §§ 301, 302 (McKinney 1990). A two-fold inquiry is required. First, a determination must be made as to whether New York law provides a basis for exercising personal jurisdiction over the defendant. If jurisdiction is proper as a result of this analysis, the second inquiry ascends to a constitutional level, which requires an assessment of whether exercising jurisdiction over the defendant would offend due process. *See International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *see also Twine v. Levy,* 746 F.Supp. 1202, 1204 (E.D.N.Y.1990). In light of the determination below that Morris is not subject to personal jurisdiction under New York law, the due process analysis need not be conducted.

### A. *"Doing Business" Pursuant to § 301*

■ CPLR § 301 states that a New York court "may exercise jurisdiction over persons, property, or status as might have been exercised heretofore." The statute incorporates all grounds of jurisdiction previously recognized at common law. *See Penny v. United Fruit Co.,* 869 F.Supp. 122, 125 (E.D.N.Y.1994). Pursuant to § 301, a foreign corporation will be subject to personal jurisdiction in New York if it is present or is "doing business" in the state. A corporation's activity rise to the level of "doing business" only when it is engaged in "such a continuous and systematic course of activity that it can be deemed present in the state of New York." *Klinghoffer v. S.N.C. Achille Lauro,* 937 F.2d 44, 50–51 (2d Cir.1991) (quoting *Laufer v. Ostrow,* 55 N.Y.2d 305, 434 N.E.2d 692, 694, 449 N.Y.S.2d 456, 458 (1982) (citations omitted)); *see Mareno v. Rowe,* 910 F.2d 1043, 1046 (2d Cir.1990); *Frummer v. Hilton Hotels Int'l, Inc.,* 19 N.Y.2d 533, 536, 227 N.E.2d 851, 853, 281 N.Y.S.2d 41, 43 (1967). Under § 301 of the CPLR, a corporation's presence in New York is determined based on the time the lawsuit is filed, not when the claim arose. *Penny,* 869 F.Supp. at 125.

Indeed, without any physical presence in New York, a foreign corporation may be subjected to the jurisdiction of New York if the corporation conducts, or purposefully directs, business "'not occasionally or casually, but with a fair measure of permanence and continuity.'" *Landoil Resources Corp. v. Alexander & Alexander Servs.,* 77 N.Y.2d 28, 34, 565 N.E.2d 488, 490, 563 N.Y.S.2d 739, 741 (1990) (*quoting Tauza v. Susquehanna Coal Co.,* 220 N.Y. 259, 267, 115 N.E. 915, 917 (1917)). The test, a "simple pragmatic one," *Bryant v. Finnish Nat. Airline,* 15 N.Y.2d 426, 432, 208 N.E.2d 439, 441, 260 N.Y.S.2d 625, 629 (1965), is necessarily fact sensitive. *See Landoil Resources Corp. v. Alexander & Alexander Servs.,* 918 F.2d 1039, 1043 (2d Cir.1990); *Stark Carpet Corp. v. M–Geough Robinson, Inc.,* 481 F.Supp. 499, 504 (S.D.N.Y.1980) (*citing Manchester Modes, Inc. v. Lilli Ann Corp.,* 306 F.Supp. 622, 624 (S.D.N.Y.1969)).

■ "In assessing jurisdiction under this pragmatic standard, New York courts have generally focused on the following indicia of jurisdiction: the existence of an office in New York; the solicitation of business in New York; the presence of bank accounts or other property in New York; and the presence of employees or

agents in New York." *Landoil*, 918 F.2d at 1043; *see Hoffritz*, 763 F.2d at 58. However, "[s]olicitation of business alone will not justify a finding of corporate presence in New York with respect to a foreign manufacturer or purveyor of services." *Laufer v. Ostrow*, 55 N.Y.2d 305, 310, 434 N.E.2d 692, 694, 449 N.Y.S.2d 456, 459 (1982); *see Frummer*, 19 N.Y.2d at 536, 227 N.E.2d at 853, 281 N.Y.S.2d at 43. Yet if the solicitation "is substantial and continuous, and defendant engages in other activities of substance in the state, then personal jurisdiction may properly be found to exist." *Landoil*, 918 F.2d at 1043–44; *see Beacon*, 715 F.2d at 763; *Aquascutum of London, Inc. v. S.S. American Champion*, 426 F.2d 205, 211 (2d Cir.1970).

■ Here, Yurman does not dispute that Morris has no offices or owns no real estate in New York, that it maintains no bank accounts in this state, and that it was not authorized to conduct business in New York during the relevant time period.[2] Morris avers that its sole connection to New York is that one or more of its employees, approximately twice a year, attend a jewelry trade show there. Upon review of the entire record, Yurman has not met its burden in establishing that Morris was "doing business" in New York with in the meaning of § 301 in 1998. Accordingly, § 301 does not provide a basis under which this Court may exercise jurisdiction over Morris.

## B. *New York State Long Arm Jurisdiction*

New York's long arm statute, CPLR § 302, provides in pertinent part:

(a) As to a cause of action arising from any acts enumerated in this section, a court may exercise personal jurisdiction over any nondomiciliary ... who in person or through an agent:

1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or

2. commits a tortious act within the state ...; or

3. commits a tortious act without the state causing injury to person or property within the state ...

N.Y. C.P.L.R. § 302(a).

■ The long arm statute thus requires "a strong nexus between the plaintiff's cause of action and the defendant's in state conduct." *Welsh*, 930 F.Supp. at 910; *see McGowan v. Smith*, 52 N.Y.2d 268, 272, 419 N.E.2d 321, 322–23, 437 N.Y.S.2d 643, 645 (1981) (explaining that there must be some "articulable nexus between the business transacted and the [claim]"); *see also Beacon*, 715 F.2d at 762.

Plaintiff has failed to establish the requisite connection between Morris' alleged activity in or outside of New York state and Yurman's injuries.

### 1. *Transacting Business*

Yurman asserts that this Court has jurisdiction over Morris pursuant to CPLR § 302(a)(1). Under CPLR § 302(a) (1), personal jurisdiction exists over a nondomiciliary who transacts business in New York, as long as the cause of action arises out of the subject matter of the business transacted. *See* N.Y. C.P.L.R. § 302(a) (1); *McGowan*, 52 N.Y.2d at 272, 419 N.E.2d at 322–23, 437 N.Y.S.2d at 645.

■ The transacting business prong of § 302(a)(1) confers jurisdiction over "a defendant who purposefully avails itself of the privilege of conducting activities within New York, thus invoking the benefits and protections of its laws." *Viacom Intern., Inc. v. Melvin Simon Productions*, 774 F.Supp. 858, 862 (S.D.N.Y.1991). New York courts look to the totality of circumstances to determine whether the defendant has engaged in some purposeful activ-

---

**2.** The jurisdictional inquiry under § 301 covers activities of the party at the time of service of summons and complaint, not at the time

alleged cause of action ensues. *See Darby v. Compagnie National Air France*, 735 F.Supp. 555, 560 (S.D.N.Y.1990).

ity in New York in connection with the matter in controversy. *Longines–Wittnauer Watch Co. v. Barnes & Reinecke, Inc.,* 15 N.Y.2d 443, 457, 209 N.E.2d 68, 75, 261 N.Y.S.2d 8, 18 (1965).

■ CPLR § 302(a)(1) authorizes the court to exercise jurisdiction over nondomiciliaries for contract and tort claims arising from a defendant's transactions of business in New York. *Kreutter v. McFadden Oil Corp.,* 71 N.Y.2d 460, 522 N.E.2d 40, 527 N.Y.S.2d 195 (1988). A single transaction of business is sufficient to give rise to jurisdiction under CPLR § 302(a)(1), even where the defendant never enters the state, if the claim arises out of the transaction.

> It [CPLR 302(a)(1)] is a "single act statute" and proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted.

*Kreutter,* 71 N.Y.2d at 467, 522 N.E.2d at 43, 527 N.Y.S.2d at 198–99; *see also Parke–Bernet Galleries, Inc. v. Franklyn,* 26 N.Y.2d 13, 256 N.E.2d 506, 308 N.Y.S.2d 337 (1970).

■ New York courts have held that a § 302(a)(1) determination as to whether defendant has transacted business "through an agent" does not require a formal agency relationship. Rather, courts focus on the "realities of the relationship in question" to determine whether the agent acted in New York "for the benefit of, and with the knowledge and consent of the non-resident principal." *Alto Products Corp. v. Ratek Industries Ltd.,* 1996 WL 497027 at *3 (S.D.N.Y. September 3, 1996) (*citing CutCo Industries v. Naughton,* 806 F.2d 361, 366 (2d Cir. 1986)); *D'Amato v. Lichine USA Co.,* 1993 WL 437772 at *1 (S.D.N.Y. October 27, 1993).

■ Yurman alleges that Morris continues to transact business in New York through its relationship with Earl, who "must maintain a substantial and jurisdictionally significant connection to New York as an authorized retailer." (Plaintiff's Reply Brief at 7). Yurman avers that Morris "apparently" paid Earl a ten percent fee in order to obtain the jewelry products from Yurman in New York. Yurman reasons that Morris' relationship with Earl constitutes an agency relationship for jurisdictional purposes and satisfies the transacting business requirement of § 302(a)(1).

While New York's approach to agency under § 302(a)(1) may be "flexible," *see D'Amato* 1993 WL 437772 at *1, it is not so elastic as to encompass the instant case. The cases cited by Yurman finding an agency relationship have involved a closer nexus between a defendant and its purported agent than exists here. In *Alto Products,* for example, there was evidence that the overseas manufacturer challenging jurisdiction was owned and controlled by the same New York-based distributor that sold the infringing goods in New York. *See* 1996 WL 497027. In the present case, the relationship between Morris and Earl is far more attenuated. Yurman has not established that Earl acted in New York for the benefit of, and with the knowledge and consent of Morris. Yurman's allegation that Morris paid Earl a ten percent fee in order to obtain the jewelry products from Yurman in New York is unsupported by the record. While the receipts from Earl to Morris do indicate a ten percent "add-on" there is no indication as to what this refers.

Accordingly, Earl cannot be held to be an agent of Morris under 302(a)(1), and thus is not subject to jurisdiction under New York law.

### Conclusion

For the reasons stated above, Yurman's motion for a preliminary injunction is hereby denied on the grounds that this Court does not have jurisdiction over de-

fendant Morris. Yurman's motion for expedited discovery is denied as moot.

It is so ordered.