**UNITED COMPUTER CAPITAL CORPORATION, Plaintiff,**

v.

**SECURE PRODUCTS, L.P. and Secure Products Corporation, Defendants,**

**No. 01–CV–0896.**

United States District Court, N.D. New York.

Sept. 11, 2002.

Hiscock & Barclay, LLP. (Richard K. Hughes, Esq., of counsel), Syracuse, NY, for Plaintiff.

Dechert, Price & Rhoads (Charles L. Poret, Esq., Bruce W. Clark, Esq., of Counsel), New York City, for Defendants.

## MEMORANDUM DECISION AND ORDER

MUNSON, Senior District Judge.

## BACKGROUND

A marketing agreement was entered on January 29, 1998, between United Recovery Services Co. ("URS"), a division of plaintiff United Computer Control Corporation ("UCCC"), and defendant Secure Products, L.P. The agreement had to do with a check authentication system developed by Secure Products that protects against counterfeit checks presented for deposit. The authentication system identifies and out-sorts counterfeit checks on the bank's high speed document sorter. The system works with an invisible authentication mark using a trade secret material that can be overtly printed on checks. A laser ink detector ("LID") system, also developed by Secure Products, identifies the unique frequency signal emitted from this material. The LID is integrated into a high-speed IBM 3890 check sorter. The system assists the payer bank in fulfilling current check-processing needs while trimming losses directly ascribed to counterfeit checks.

In October 1997, Secure Products met with URS, a division of United Computer Capital Corporation, to discuss a possible arrangement in which URS would assist in integrating Secure Product's LID device into the IBM 3860 check sorter. URS advised Secure Products that its affiliated company Qwinstar, could develop and install a software interface that would enable the LID detector system to be used in an IBM 3890 check sorter. The parties then negotiated and entered the marketing agreement covering the integration of the LID system into the IBM 3890, and granting URS the exclusive right to sell or lease the LID system to the banking industry.

The work on the integration of the LID system into the IBM check sorter began, but the results URA promised in the marketing agreement were not forthcoming. In a letter dated March 12, 2001, Secure Products gave formal notice to URS to remedy its nonperformance, and requesting URS to make a written response by March 15, 2001. When URS did not respond by that date, Secure Products gave notice of the termination of the marketing agreement. Plaintiff then commenced this action claiming Secure Products breached the marketing agreement by terminating it and refusing to withdraw its termination. The complaint based jurisdiction on the provision of New York Civil Practice Law and Rules ("CPLR") § 302(a)(1) under which a court may exercise jurisdiction over contract and tort claims that arise from a foreign defendant's transaction of business in New York. Defendants then filed the instant motion under Rule 12(b)(2) seeking dismissal of the complaint for lack of jurisdiction over the person because the defendants did not transact any business in New York that would meet the jurisdictional requirements of § 302. Plaintiff has entered opposition to this motion.

In asserting that defendants transacted business in New York, the complaint points to these facts. The marketing agreement became effective after it was signed by plaintiff's employee in the State of New York. When Secured Products en-

tered into the marketing agreement with a New York corporation, some level of business activity between the parties in New York was anticipated. This was demonstrated when defendants' corporate officers participated in several meetings in New York relating to the marketing agreement. These sales promotion and marketing meetings took place with Chase Bank, the New York Clearing House and Citibank. The meetings with Citibank and the New York Clearing House resulted in these entities leasing LIDs from United Recovery. A meeting between the agreement parties to discuss the respective parties' obligations under the marketing agreement also took place in New York.

As additional evidence that defendants transacted business in New York, plaintiff points out that Secure Products maintains an interactive worldwide website that invites visitors to use the telephone and email to ask Secure Products questions and order its products. Plaintiff postulates that this website's interactive nature, when combined with Secured Products other New York activities, will support a finding that Secured Products is subject to jurisdiction under New York' long-arm statute.

Defendants answer that plaintiff's lawsuit is the alleged breach of the marketing agreement between the parties and maintains, *inter alia*, that the agreement was formed entirely in the state of New Jersey. Both defendants are located in New Jersey. All meetings between Secure Products and URS concerning the forming of a business relationship between the parties, including the negotiating of the marketing agreement occurred in New Jersey. Correspondence and electronic conferences concerning the establishment of a business relationship took place between the parties in defendants' New Jersey offices. The agreement was signed by Secure Products in New Jersey and sent to URS's New Jersey office, and where URS signed it is not a factor to be considered. The notice of termination of the marketing agreement was mailed from New Jersey by Secured Products.

Secure Products further contends that it did not contemplate either party performing the contract in New York because the technical work of developing the software was to be done at the Minnesota office of URS's subcontractor, Qwinstar, and at URS's facility in Cherry Hill, Nw Jersey. Regarding the marketing functions that URS was to undertake, the LID device was manufactured and sold by Scantek Corporation in Texas; the four LID devices leased by URS had been used in Citibank's facility in Delaware. The marketing agreement provides that the parties contract is governed by New Jersey law. Secure Products further claims that it did it not subject itself to New York jurisdiction by voluntarily attending approximately five meetings in New York over a three year period with three potential customers to assist in the marketing of the LID system, when the marketing agreement did not require that Secured Products participate in such meetings, or did it become subject to New York jurisdiction by merely going to URS's New York office once to attempt to enhance URS's performance of its contractual responsibilities. Additionally, Donald Scuilli, Vice President of Secure Products Corporation, avers that neither Secure Products Corporation nor Secure Products, L.P. has or maintains a website, that neither entity is in any way whatsoever connected to the website identified as, *www.securepro-ducts.com*, which is operated by a company known as Secure Products Corp., and lists its telephone number as 630/833–8281, an Illinois area code number. (Doc. # 27).

## DISCUSSION

"When responding to a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir.1999). Where, as here, a court relies on pleadings and affidavits, rather than having a "full blown evidentiary hearing," the plaintiff need only make a *prima facie* showing that the court possesses personal jurisdiction over the defendant. *Id.* (*quoting Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir.1981)). The pleadings and affidavits are construed in the light most favorable to United Computer Capital Corporation resolving all doubts in its favor. *CutCo Industries v. Naughton*, 806 F.2d 361, 365 (2d Cir.1986).

Although the allegations of the complaint may be deemed true to test jurisdictional theory of the complaint, defendants here challenge not only the theory but also the facts on which jurisdiction was predicated. *Credit Lyonnais Securities (USA), Inc. v. Alcantara*, 183 F.3d 151, 153 (2d Cir.1999)

Where the basis of federal jurisdiction is diversity of citizenship, a federal court in this state applies New York law to determine whether jurisdiction over the defendant may be exercised *CutCo Industries, Inc.*, 806 F.2d at 365. Under New York's long arm statute, Civil Practice Law and Rules ("CPLR") § 302(a)(1), a court may exercise jurisdiction over contract and tort claims that arise from the foreign defendant's transaction of business in New York. *Yurman Designs, Inc. v. A.R. Morris Jewelers*, 41 F.Supp.2d 453, 458 (S.D.N.Y.1999); *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467, 527 N.Y.S.2d 195, 198, 522 N.E.2d 40 (1988) The person asserting jurisdiction under the long arm statute has the burden of establishing personal jurisdiction. *Armouth International, Inc. v. Haband Company*, 277 A.D.2d 189, 190, 715 N.Y.S.2d 438, 439 (2d Dept. 2000). In such cases, however, personal jurisdiction may be exercised only as to causes of action that arise from the transaction of business relied upon. *Credit Lyonnais Securities (USA), Inc. v. Alcantara*, 183 F.3d 151, 153 (2d Cir.1999). The existence of jurisdiction is determined under the CPLR as of the time of service of the summons and complaint, and not when the cause of action arose. *Yurman*, 41 F.Supp.2d at 458 n. 2.

To "transact business" in New York, a non-domiciliary must purposefully avail itself of the privilege of conducting activities within New York, thus invoking the benefits and protection of its laws. *McKee Electric Company v. Rauland–Borg Corp.*, 20 N.Y.2d 377, 382, 283 N.Y.S.2d 34, 37–38, 229 N.E.2d 604 (1967)(quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958)). A court must look to the totality of circumstances to determine the existence of such purposeful activity, and may not subject a defendant to jurisdiction based on "random, fortuitous, or attenuated contacts." *K.C.P.L., Inc. v. Nash*, 1998 WL 823657, at *4 (S.D.NY. Nov. 24, 1998)(citing *CutCo Industries, Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir.1986)). It is the "nature and quality," not the amount, of New York contacts which determine whether there has been purposeful activity. *Standard Enterprises, Inc. v. Bag–It, Inc.*, 673 F.Supp. 1216, 1220 (S.D.N.Y.1987). In judging whether there are sufficient contacts, the New York Court of Appeals has cautioned that courts should not forget that defendants, as a rule, should be subject to suit where they are normally found, that is, at their preeminent headquarters or where they conduct substantial general business activities.

Only in rare cases should they be compelled to answer a suit in a jurisdiction in which they have the barest of contact. *Kahn Lucas Lancaster, Inc. v. Lark International Ltd.,* 956 F.Supp. 1131, 1134 (S.D.N.Y.1997)(citing *McKee Electric Company v. Rauland–Borg Corp.,* 20 N.Y.2d 377, 382, 283 N.Y.S.2d 34, 38, 229 N.E.2d 604 (1967)).

A cause of action will arise from the transaction of business within the state only if there is "a substantial nexus between the business transacted and the cause of action sued upon." *Agency Rent A Car,* 98 F.3d at 31; *Photoactive Productions, Inc. v. Al-or International, Ltd.,* 99 F.Supp.2d 281 (E.D.N.Y.2000). At a minimum, the defendant's contact with New York "must provide a fair warning to the defendant of a possibility of being subject to the courts of the forum state." *Benson & Associates, Inc. v. Orthopedic Network,* 1998 WL 388531, at *3 (S.D.N.Y. July 13, 1998)(citing *Kreutter v. McFadden Oil Corp.,* 71 N.Y.2d 460, 465–466, 527 N.Y.S.2d 195, 198, 522 N.E.2d 40 (1988)).

■ Factors to be considered when deciding whether a defendant is transacting business within New York include: (1) does the defendant have an ongoing relationship with a New York corporation; (2) was the contract at issue negotiated in New York; (3) does the contract have a choice of law provision; and (4) were payments to be made into New York or was performance to be supervised from New York. *Agency Rent A Car System, Inc. v. Grand Rent A Car Corp.,* 98 F.3d 25, 29 (2d Cir.1996).

Where a plaintiff's cause of action is based upon a contract, negotiation of the contractual terms by phone, fax or mail with the New York party is generally insufficient to support a finding of the transaction of business in New York. *Worldwide Futgol Associates, Inc. v. Event Entertainment, Inc.,* 983 F.Supp. 173, 176–177 (E.D.N.Y.1997). The fact that a defendant signed a contract at issue in New Jersey, and the plaintiff may have executed the contract in New York is also insufficient to sustain a transaction of business finding. *Libra Global Technology Services (UK) Limited v. Telemedia International, Ltd.,* 279 A.D.2d 326, 327, 719 N.Y.S.2d 53, 54 (1st Dept.2001)(Where "a defendant has signed a contract outside of [New York], a court cannot exercise jurisdiction over that defendant pursuant to CPLR 302(a)(1)").

■ To establish jurisdiction in New York based on a meeting or meetings in that state, the meeting or meetings must be essential to the formulation of a business relationship. *Kahn Lucas Lancaster, Inc. v. Lark International Ltd.,* 956 F.Supp. 1131, 1136 (S.D.N.Y.1997) "When the visit ... is not for the purpose of initiating or forming a relationship, but is to alleviate problems under a pre-existing relationship, New York courts have declined to assert jurisdiction." *United States Theatre v. Gunwyn/Lansburgh Ltd.,* 825 F.Supp. 594 (S.D.N.Y.1993)(citing *McKee Electric Co. v. Rauland–Borg Corp.,* 20 N.Y.2d 377, 283 N.Y.S.2d 34, 229 N.E.2d 604, 606 (1967)). In addition, meetings in the forum state that are exploratory, unproductive, or insubstantial are insufficient to establish requisite contacts with the state. *PaineWebber Inc. v. WHV, Inc.,* 1995 WL 296398, at *3 (S.D.N.Y. May 16, 1995). The activities at the few New York meetings cited by plaintiff lack any substantial nexus between the business transacted and the cause of action sued on. Plaintiff's claims are for breach of the marketing agreement contract, a declaratory judgment that the contract remains in full force and effect, and, alternatively, for specific performance of the contract. The only "transactions" relevant to these claims are (1) negotiation of the marketing agreement contract; and (2) defen-

dant's breach, if any, of the contract, all of which took place, if at all, outside of New York state. Defendants' few New York visits over three years are irrelevant to plaintiff's claims and cannot provide a basis for exercising jurisdiction over defendants. The contract did not require defendants presence at plaintiff's New York sales promotion meetings, and defendants' New York meeting with plaintiff seeking to get URS to perform its contractual obligations was simply an attempt to ease concerns under a pre-existing relationship. These meetings relate only indirectly to plaintiff's claims against defendants, representing mere link[s] in the chain of events leading to the claim[s] for which relief is sought, *Xedit Corp. v. Harvel Industries Corp.*, 456 F.Supp. 725, 729 (S.D.N.Y. 1978), and they are insufficient to justify the assertion of personal jurisdiction over the defendants.

Plaintiff's allegations concerning defendants transaction of business in New York through the operation of an interactive worldwide website there will not be considered by the court. Defendants have averred that they do not operate such a website, and, aside from some similarity of names between the company featured on the website and the defendants, plaintiff has not demonstrated any positive connection between the website and the defendants.

■■■ The finding that this court lacks personal jurisdiction over the defendants does not preclude entry of an order transferring this matter to a district where personal jurisdiction may be exercised. *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 467, 82 S.Ct. 913, 916, 8 L.Ed.2d 39 (1962). 28 U.S.C. § 1406(a) requires that court to dismiss this matter, or, in the interest of justice, transfer the matter to a district where the venue is proper. *Corke v. Sameiet M.S. Song of Norway*, 572 F.2d 77–79 (2d Cir.1978).

■■■ Plaintiff commenced this action in Federal Court, albeit in the wrong venue. Upon consideration, the court finds that the interests of justice would be favored by transferring this matter to a forum where plaintiffs may obtain personal jurisdiction over defendants. The forum where personal jurisdiction is proper is the United States District Court for the District of New Jersey. It is to that forum that this case will be transferred. The fact that the marketing agreement was signed by United Recovery Services Co., a division of plaintiff located in New Jersey, will not affect diversity jurisdiction in this case. The state of citizenship of which an unincorporated division of a corporation is a citizen for the purpose of determining diversity is the state of which the corporation that owns the division is a citizen, in this case New York. *Paper Corporation of the United States v. Benedetto* 1993 WL 378341, a*2 (S.D.N.Y. Sept 20, 1993); *Wisconsin KnifeWorks v. National Metal Crafters, (en banc)* 781 F.2d 1280, 1282 (7th Cir.1986).

Accordingly, defendants' motion to dismiss for lack of personal jurisdiction is **GRANTED**. The Clerk of the Court is directed to close the file in this matter and to transfer such file to the United States District Court for the District of New Jersey.

**IT IS SO ORDERED.**