*201 OPINION OF THE COURT
Arthur F. Engoron, J.
Defendants’ request to dismiss for lack of personal jurisdiction is granted, and defendants’ request for sanctions for frivolous litigation is denied.
Background
In this action plaintiff Spencer Laminating Corp. alleges that defendant James J. Denby, Jr., individually and doing business as Trucking Tarps, which is actually an Illinois corporation, failed to pay plaintiff for certain goods that plaintiff shipped from New York to defendants in Illinois.
Neither side has significantly disputed the factual allegations of the other. Thus, the court finds, for purposes of the instant motion, that the individual defendant, James Denby, is a domiciliary of Illinois; that the entity defendant, “Trucking Tarps,” is actually a corporation organized under the laws of Illinois; that defendants conduct business in Illinois; that they are not licensed to conduct business in New York; that they do not conduct business in New York; that they have no sales representatives, agents or telephone numbers in New York; that they do not advertise or seek business in New York; and that they do not own, lease or occupy any real or personal property in New York. Defendants have a Web site (opp. exhibit 2) “where [they] display [their] business to the Internet Community, to inform [it] of who [they] are and what [they] do.”
The parties’ first contact with each other occurred when defendants shipped a sample tarpaulin to plaintiff and asked if plaintiff could duplicate the material thereof. Thereafter, the parties negotiated the subject contract (or series of contracts) by telephone and/or mail, and by plaintiffs sales representative visiting defendants in Illinois (Denby opp. affidavit 1Í12). Nothing in the record indicates that defendants ever entered New York.
The contract was to be governed by “ ‘Worth Street Rules,’ which are rules of custom and usage that derive from New York’s textile industry, originally centered on Worth Street in Manhattan.” (Rosenberg opp. affidavit 1f 2; exhibit.) Thereafter, plaintiff shipped goods to Illinois. A dispute as to quality and payment arose. Plaintiff then commenced the instant action (the merits of which are not germane to today’s decision), serving process upon defendants in Illinois. Defendants now move to dismiss for lack of personal jurisdiction.
*202 Discussion
Is There a Basis for Long-Arm Jurisdiction?
New York’s “long-arm” statute, CPLR 302 (a), provides, as here relevant, as follows:
“As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary . . . who in person . . .
“1. Transacts any business within the state or contracts anywhere to supply goods or services in the state.”
Perhaps as good a summary as any of how this is to be interpreted is found in Kreutter v McFadden Oil Corp. (71 NY2d 460, 466 [1988]), cited by plaintiff (Sivin opp. affidavit 1f 7): “So long as a party avails itself of the benefits of the forum, has sufficient minimum contacts with it, and should reasonably expect to defend its actions there, due process is not offended if that party is subjected to jurisdiction even if not ‘present’ in that State.”
Of course, what is “sufficient” and “reasonable” is always a subjective determination. This court, viewing the totality of the circumstances, does not think that an Illinois business that mail-ordered some nylon fabric from New York has “avail[ed] itself of the benefits” of New York, had “sufficient. . . contacts with it,” or “should reasonably expect to defend its actions” here.
The classic instance in which personal jurisdiction is found not to exist is the one in which the in-state plaintiff ships goods to the out-of-state defendant, who sends (or, more accurately, fails to send) payment. Without more, this is insufficient to confer long-arm jurisdiction. (E.g. M. Katz & Son Billiard Prods. v G. Correale & Sons, 26 AD2d 52 [1st Dept 1966] [New Jersey corporation that ordered billiard equipment from New York not subject to jurisdiction here], affd 20 NY2d 903 [1967]; cf. Rainbow Indus. Prods. v Haybuster Mfg., Inc., 419 F Supp 543 [SD NY 1976] [finding no jurisdiction over North Dakota corporation that mailed orders to New York; goods were manufactured in and shipped from Japan].)
In the instant case, there is slightly more: defendant sent the sample tarpaulin into New York; the parties agreed to be bound by “Worth Street Rules”; and defendant has a Web site. The question is whether any, or all, of these factors is sufficient to confer jurisdiction.
*203 The Web site adds little or nothing. These days, any self-respecting business has a Web site. That obviously does not make all of them amenable to suit in any state with a computer, a modem, and a telephone line (i.e., all 50) into which they ship goods. Furthermore, even assuming that a Web site is a factor in determining whether a party is “present” in a particular jurisdiction, and, thus, subject to CPLR 301 “presence” jurisdiction, the instant Web site does not contribute to long-arm jurisdiction in this case because the cause of action did not arise from the Web site.
The adoption of “Worth Street Rules” also adds little or nothing. This aspect of the parties’ agreement is not, strictly speaking, a choice-of-law provision. “Worth Street Rules” is not synonymous with “New York law.” They are rules of custom and usage in the industry that evolved in New York but have spread nationwide. The phrase “Worth Street Rules” is, thus, just a shorthand for certain contractual provisions that the parties here agreed to incorporate by reference. In any event, even a bona fide choice-of-law provision will not confer jurisdiction. (E.g., Aero-Bocker Knitting Mills v Allied Fabrics Corp., 54 AD2d 647, 648 [1st Dept 1976].) Indeed, such a provision may not have any jurisdictional implications at all. (Galgay v Bulletin Co., Inc., 504 F2d 1062, 1066 [2d Cir 1974] [“It is well established that (a) choice-of-law provision does not have jurisdictional implications”].)
Finally, the shipping of a sample of a tarpaulin from Illinois to New York, to show plaintiff what defendants needed, is not enough to confer jurisdiction, alone or even in tandem with the factors discussed above. The sample was simply a shorthand, illustrative way of explaining defendants’ needs. Sending a piece of paper, or an e-mail, with specifications, and a request for a bid, is a far cry from purposeful activity in New York. Indeed, in Aero-Bocker (54 AD2d, supra at 648), the “[defendant, a foreign corporation, advertised in Woman’s Wear Daily inviting offers to supply it with material.” Nevertheless, the Court found that there were “insufficient contacts to classify defendant as doing business in New York.” (Id. at 649.) Advertising in Woman’s Wear Daily should sooner subject one to personal jurisdiction than shipping a sample of cloth from Illinois.
Defendant cites to L.F. Rothschild, Unterberg, Towbin v Thompson (78 AD2d 795 [1st Dept 1980]) in which a New York stockbroker licensed to do business in Alabama sued an Alabama customer to recover for a negative account balance that *204 resulted from 25 transactions over a four-month period. “While the defendant-respondent never came to New York, he sent checks and securities and his agreement covering his arrangement with the plaintiff-appellant to New York.” (Id. at 795.) The agreement contained a New York choice-of-law provision. Reversing a Supreme Court decision that had affirmed a referee’s report that personal jurisdiction did not exist, the Appellate Division held “that there was sufficient ‘purposeful activity’ within the state so as to confer jurisdiction upon our courts under” CPLR 302 (a) (1) (at 795).
Rothschild is distinguishable from the instant case on a number of grounds. There, the defendant sent securities to New York. Here, plaintiff sent material from New York. There, plaintiff was licensed to do business, and, thus, presumably could have been sued, in Alabama. Thus, reciprocity suggested jurisdiction. Here, plaintiff was not licensed to do business in Illinois. There, the parties agreed to the application of New York law. Here, the parties incorporated rules of custom and usage developed in New York but followed nationwide. As pointed out by defendant here, although not mentioned in the Rothschild opinion, the plaintiff there apparently was defendant’s agent in New York for the stock trades at issue. Finally, there, the parties engaged in 25 transactions over four months. Here, it appears that the parties engaged in three or four transactions over six months (Rosenberg opp. affidavit 1111 4-7). New York may be a “single act” jurisdiction, but, in Newbro v Freed (2004 WL 691392, *3, 2004 US Dist LEXIS 5358, *6 [SD NY, Mar. 31, 2004]), the court summarized Rothschild as follows: “jurisdiction [held] proper over defendant customer who placed 25 orders with stock broker over a four-month period.” Whether Rothschild would be decided the same way today, when the United States Supreme Court is so concerned with “federalism,” is also open to question. So, too, is whether the Appellate Division was influenced by the “national” nature of stock trading, which is quite different from a garment business and a tarpaulin manufacturer in Farmersville, Illinois.
In Fabrikant & Sons v Adrianne Kahn, Inc. (144 AD2d 264 [1st Dept 1988]), which also reversed a Supreme Court opinion confirming a referee’s report, the Court found jurisdiction over an out-of-state defendant whose president personally negotiated the parties’ agreement while physically present in New York. In Cyberlech Communications Corp. v Quad Intl. (262 AD2d 44, 44 [1st Dept 1999]), the Court found jurisdiction upon a
*205 “showing that the parties’ agreement was negotiated to a substantial degree in New York, together with [a] showing of Quad’s additional New York business contacts, such as its annual board meetings, its sales of magazines and magazine advertising space to and by New York domiciliaries, and its New York sales through its web site.”
New York must protect its businesses, without discouraging those in sibling states from contracting with them. To hale into a New York court an Illinois corporation because it asked for a price quote and mail-ordered some material would be to sacrifice the latter on the altar of the former. Personal jurisdiction does not lie.
Is There a Basis for Disclosure?
CPLR 3211 (d) provides as follows:
“Should it appear from affidavits submitted in opposition to a motion made under subdivision (a) or (b) that facts essential to justify opposition may exist but cannot then be stated, the court may deny the motion, allowing the moving party to assert the objection in his responsive pleading, if any, or may order a continuance to permit further affidavits to be obtained or disclosure to be had . . . .”
In Peterson v Spartan Indus. (33 NY2d 463, 466 [1974]), the Court held that a plaintiff opposing a motion to dismiss for lack of personal jurisdiction need not make out a prima facie case of jurisdiction prior to being granted disclosure, pursuant to CPLR 3211 (d), to search for facts that “may exist.” The plaintiffs there had “made a sufficient start, and shown their position not to be frivolous.” (Id. at 467.) In that case, the defendant manufacturer had “applied for several permits and received permission to sell and store some of its products in New York, albeit some years before the event alleged in the complaint.” (Id.) Furthermore, the defendant had represented, falsely, that storage and use of the product had been approved. (Id.) Thus, defendant had purposefully availed itself of the privileges and protections of doing business in New York. Indeed, the Court of Appeals might have denied the motion to dismiss on that basis alone, except that that issue was not before the Court (strictly speaking, a disclosure issue was). On the other hand, the First Department has held that “[l]eave for jurisdictional discovery [is] properly denied [if a] plaintif[f] d[oes] not show that facts may exist which would warrant the denial of defendants’ motion [to dismiss for lack of personal jurisdiction].” (de Capriles v Lugo, 293 AD2d 405, 406 [1st Dept 2002].)
*206 Here, all plaintiff has demonstrated is that defendant ordered some goods from New York. There is no reason to expect that disclosure will lead to a showing that defendant owned property or advertised in New York, or that it had staff or agents or telephones here. This is not to say that such a state of affairs could not have existed. However, looking for them would be a “fishing expedition.” Participating in this disclosure would be burdensome and expensive for defendant, and would, in part, contravene the purpose of rules limiting extraterritorial personal jurisdiction. The lack of any preliminary showing, and the unlikelihood of success, convince this court that defendant need not go through the process.
Sanctions
Defendant clearly is not entitled to sanctions for frivolous litigation pursuant to 22 NYCRR part 130.
Conclusion
Thus, the instant motion is granted, and the clerk is hereby directed to enter judgment dismissing the instant action for lack of personal jurisdiction.