Dated: February 7, 2013

**RAINBOW APPAREL DISTRIBUTION CENTER CORP., et al., Plaintiffs,**

v.

**GAZE U.S.A., INC., et al., Defendants.**

**No. 13–CV–3640.**

United States District Court,
E.D. New York.

Oct. 30, 2013.

Ariel Samuel Peikes, George Gottlieb, Steven Stern, Gottlieb, Rackman & Reisman PC, New York, NY, for Plaintiff.

Chan Yong Jeong, David Dong Ann Lin, Jeong & Likens, Los Angeles, CA, for Defendants.

## MEMORANDUM & ORDER

JACK B. WEINSTEIN, Senior District Judge.

I. Introduction .................................................. 21

II. Facts and Procedural History ................................ 22

III. Motion to Dismiss for Failure to State a Claim ............. 23
 A. Legal Standard for a 12(b)(6) Motion .................... 23
 B. Application of Law to Facts ............................. 23
 1. Claims for Declaratory Relief ...................... 23
 2. Claim for Breach of Contract ....................... 24

IV. Motion to Dismiss for Lack of Personal Jurisdiction ........ 24
 A. Standard of Review for a 12(b)(2) Motion ................ 24
 B. Personal Jurisdiction: Law .............................. 25
 1. Transaction of Business within New York ............ 25
 2. Imputing Jurisdiction through an Agent ............. 25
 3. Claims Arising from New York Transactions .......... 25
 4. Due Process Considerations ......................... 26
 C. Application of Law to Facts ............................. 26
 1. Gaze is Hong's Agent ............................... 26
 2. Plaintiffs' Claims Arise from the New York Transactions .............. 27
 3. Due Process is Satisfied ........................... 27

V. Conclusion .................................................. 28

## I. Introduction

Plaintiffs sue apparel importer Gaze U.S.A., Inc., ("Gaze") and its sole shareholder and president, Ji S. Hong a/k/a Jay Hong ("Hong") (collectively "defendants"), seeking a declaratory judgment in a trademark dispute and damages for breach of contract. *See* Compl., ECF No. 1, June 27, 2013 ("Compl."). Gaze counterclaims for breach of contract and unjust enrichment. *See* Def. Gaze U.S.A., Inc.'s Answer and Countercl. ("Answer") ¶¶ 17–18, ECF No. 29.

Gaze moves to dismiss the complaint for failure to state a claim upon which relief can be granted. Hong moves to dismiss for lack of personal jurisdiction. As in many personal jurisdiction long-arm cases, the special

factual circumstances of this case make precedents of limited value.

While applicable statutes and cases do not explicitly recognize the factor, much depends on practical aspects of litigation such as would a finding of personal jurisdiction or of no personal jurisdiction: substantially add to the cost and inconvenience of the individual and of others to try the case in the venue chosen by the plaintiff; do critical aspects—such as choice of law—make the case against the individual more conveniently tried in the venue chosen by the plaintiff; and would failure to find personal jurisdiction over one of the defendants require a separate trial elsewhere, leading to repetitive discovery, extended trial time, and possible inconsistent verdicts. These factors require the court to consider the practical judgment of experienced litigators and judges as well as the criteria supplied by appellate courts and statutes. *See* Part IV.C.3, *infra.*

Although a close question, personal jurisdiction over Hong in New York, in this case, is proper.

The motion to dismiss for failure to state a claim and the motion to dismiss for lack of personal jurisdiction are denied.

## II. Facts and Procedural History

Rainbow Apparel Distribution Center Corp. ("Rainbow") and The New 5–7–9 and Beyond, Inc., ("The New 5–7–9") (collectively "plaintiffs") are affiliated businesses organized under New Jersey and New York law, respectively, with their principle places of business in New York. Compl. ¶¶ 7, 9. They are apparel distributors who advertise and supply garments to retail establishments. *Id.* at ¶¶ 8, 10.

Defendant Gaze is a California corporation, with an address in Los Angeles, California, that imports garments for sale to apparel distributors, including plaintiffs. *Id.,* at ¶¶ 11–13. Gaze admits that it is subject to personal jurisdiction in New York. *See* Answer ¶ 25 ("Defendant admits jurisdiction in the Eastern District of New York is appropriate for adjudication of the claims brought ... against [Gaze.]").

Defendant Hong resides in California. *See* Decl. of Ji S. Hong in Supp. of Mot. to Dismiss ("Hong Decl.") ¶ 3, ECF No. 18. He is the president of Gaze and is its sole shareholder. Mot. to Dismiss Hr'g Tr. ("Hr'g Tr.") 8:11, 9:23, Oct. 10, 2013, ECF No. 34. As chief operation officer, Hong has travelled to New York approximately three times per year since 2011 to meet with the corporation's clients, including plaintiffs. Hr'g Tr. 13:6–14:25. He executes contracts on behalf of Gaze. *See* Hr'g Tr. 22:15–28:25; Compl. Ex. B.

Plaintiffs allege that Hong was deeply involved in "significant commercial activities" with Gaze. Pls.' Mem. in Opp'n to Mot. to Dismiss for Lack of Personal Jurisdiction 7, ECF No. 25. Specifically, plaintiffs purchased apparel from Gaze under purchase orders authorized by Hong. Compl. ¶ 15. Gaze shipped the apparel to plaintiffs in New York for resale under the parties' Minimum Maintained Markup Agreement (the "Markup Agreement"). Compl. ¶¶ 15–17. Some of the apparel shipped by Gaze to plaintiffs bore the mark "URVANA," a mark Hong owned in his own name. Hr'g Tr. 25:21–22. URVANA is a portmanteau of "urban" and "nirvana." Hr'g Tr. 11:9–11.

The present matter arises, in part, out of plaintiffs' resale of goods bearing the URVANA mark after Gaze and Rainbow terminated their contractual relationship in August or September 2012. Hr'g Tr. 27:25–28:1. Hong asserts ownership in the URVANA mark pursuant to U.S. Trademark Registration Number 4,110,244, registered on March 6, 2012 with a first use date of August 1, 2011. Compl. Ex. A. According to Hong, Gaze imports apparel bearing the mark under an oral license with Hong; plaintiffs were only allowed to sell URVANA marked apparel that they received from Gaze. Hr'g Tr. 12:9–21. Hong contends that after Gaze stopped shipping URVANA marked apparel to plaintiffs, they purchased URVANA marked apparel from another source and resold those garments, infringing upon his trademark. Hr'g Tr. 27:13–20. When Hong became aware of the alleged infringement, he sent a cease and desist letter to plaintiffs; received on June

20, 2013. Hr'g Tr. 12:9–14; Compl. ¶ 35, Ex. A.

Plaintiffs brought the present action on June 27, 2013, seeking a Declaration of non-infringement, invalidity, unenforceability, and ownership of the URVANA mark and to cancel the URVANA mark as invalid. Compl. ¶¶ 14, 31, 33, 55, 59. Alternatively, plaintiffs ask for a declaration that they had an actual or implied license to use the mark. *Id.* at ¶¶ 62–64.

Plaintiffs also assert a breach of contract claim for $545,000 pursuant to the Markup Agreement. The Agreement between Gaze and Rainbow guaranteed plaintiffs at least a 50 percent markup on all goods shipped by Gaze. Compl. Ex. B. Were plaintiffs unable to sell Gaze's goods at the target markup price, they had the right to discount the goods and Gaze would pay them the difference between the discounted sale price and the markup target. Compl. ¶ 47. Plaintiffs contend that Gaze owes them reimbursement for permissible markdowns. Compl. ¶¶ 48–49.

Contained in the Markup Agreement is a clause selecting substantive New York state contract law to govern the rights and obligations of the parties. Compl. ¶ 27. The same provision requires the contracting parties to submit to the jurisdiction of a New York state or federal court for any proceeding, action, or suit arising out of the Markup Agreement, the merchandise subject to it, or any purchase order covered by it. *Id.* Hong signed the Markup Agreement as president of Gaze. Compl. Ex. B.

### III. Motion to Dismiss for Failure to State a Claim

#### A. Legal Standard for a 12(b)(6) Motion

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) allows dismissal of a claim when the pleadings fail to "state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). While plaintiffs are not required to put forward "detailed factual allegations," a complaint that offers merely "labels and conclusions" or "a formulaic reci-

tation of the elements of a cause of action" is insufficient. *Bell Atlantic v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). To survive a motion to dismiss, a complaint must contain enough facts, accepted as true, to "state a claim to relief that is plausible on its face." *Johnson v. Rowley,* 569 F.3d 40, 44 (2d Cir.2009) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)). The plausibility standard requires that the complaint allege more than "a sheer possibility that a defendant has acted unlawfully" and more than "facts that are merely consistent with a defendant's liability." *In re Amaranth Natural Gas Commodities Litig.,* 730 F.3d 170, 180 (2d Cir.2013) (quoting *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937).

In ruling on a 12(b)(6) motion, factual allegations in the complaint are accepted as true and all reasonable inferences are drawn in the plaintiff's favor. *Hayden v. Paterson,* 594 F.3d 150, 160 (2d Cir.2010). To determine the adequacy of the complaint, the court may consider any written instrument attached to the complaint as an exhibit or incorporated in the complaint by reference, as well as integral documents upon which the complaint relies. *Subaru Distrib. Corp. v. Subaru of Am., Inc.,* 425 F.3d 119, 122 (2d Cir.2005). Whether a complaint states a plausible claim to relief is a context-specific inquiry that requires the reviewing court to draw on its judicial experience and common sense. *Amaranth,* 730 F.3d at 180; *Harris v. Mills,* 572 F.3d 66, 72 (2d Cir. 2009).

#### B. Application of Law to Facts

##### 1. Claims for Declaratory Relief

Trademark rights are acquired and maintained through use of a particular mark. *Pirone v. MacMillan, Inc.,* 894 F.2d 579, 581 (2d Cir.1990); *Talk To Me Prods., Inc. v. Larami Corp.,* 804 F.Supp. 555, 559 (S.D.N.Y.1992), *aff'd,* 992 F.2d 469 (2d Cir. 1993). Although registration of a mark gives rise to protection under the Lanham Act, underlying trademark rights depend not on registration but on priority—and priority is acquired through use. *See* 15 U.S.C.

§ 1057(c) (stating registration of mark "shall constitute constructive use of the mark, conferring a right of priority ... against any other person *except for a person whose mark has not been abandoned and who, prior to such filing[,] ... has used the mark* ") (emphasis added); *see also ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 147 (2d Cir.2007) ("It is axiomatic in trademark law that the standard test of ownership is priority of use.") (quoting *Sengoku Works v. RMC Int'l*, 96 F.3d 1217, 1219 (9th Cir.1996)); *La Societe Anonyme des Parfums le Galion v. Jean Patou, Inc.*, 495 F.2d 1265, 1271 (2d Cir.1974) ("[T]he right to exclusive use of a trademark derives from its appropriation and subsequent use in the marketplace.").

Depending on continuity of use and other factors, a prior user may exclude others from use of the mark. *ITC Ltd.*, 482 F.3d at 147; *Defiance Button Mach. Co. v. C & C Metal Prods. Corp.*, 759 F.2d 1053, 1059 (2d Cir. 1985). A prior user may also obtain cancellation of a second user's registration of a mark on any ground that would have prevented registration of the trademark in the first instance. *See, e.g.*, 15 U.S.C. § 1052(d) (listing confusion with a previously used mark as one such ground for initial refusal); *Sterling Drug, Inc. v. Bayer AG*, 14 F.3d 733, 743 (2d Cir.1994) ("If a second user's use of the mark creates a likelihood of confusion, a prior user can obtain a cancellation of the second user's registration."). Declaratory relief is appropriate in this context to relieve parties from the uncertainty resulting when ownership of a mark is in dispute. *See Starter Corp. v. Converse, Inc.*, 84 F.3d 592, 597 (2d Cir. 1996).

■ Plaintiffs allege that they directed Gaze to manufacture garments bearing the mark and that they otherwise used the mark in commerce before defendants. *See* Compl. ¶¶ 14, 33, 55. Defendants refer to these allegations as "conclusory." *See* Mem. of P. & A. in Supp. of Def. Gaze's Mot. to Dismiss Pursuant to F.R.C.P. 12(b)(6) ("Def.'s 12(b)(6) Mem.") 2, ECF No. 9. They would require plaintiffs to plead that they "attempted to register the URVANA mark" or that they "created the mark or purchased an ownership interest in the mark" to meet pleading standards. *Id.* Such specificity is not necessary at the present stage of litigation. It is sufficient that plaintiffs have plead facts regarding prior use that state a facially plausible claim that they are entitled to the declaratory relief they seek.

■ Alternatively, plaintiffs claim that they did not infringe because they had an actual or implied license to use the mark. *See* Compl. ¶ 62. They assert that defendants knew and consented to plaintiffs' use of the URVANA mark. *Id.* at ¶ 64. Plaintiffs' complaint need not contain "specific statements, written or verbal," that an actual or implied license existed. *See* Def.'s 12(b)(6) Mem. 3. Plaintiffs and defendants were engaged in a course of dealing since 2011, and Hong admits that while the parties' contracts were in force, plaintiffs had his limited permission to use the mark. Hr'g Tr. 12:9–21. It is plausible to infer that an actual or implied license arose from this course of dealing. Additional discovery will clarify the extent of plaintiffs' rights vis-à-vis the mark.

### 2. Claim for Breach of Contract

Defendant argues that plaintiffs' claim for breach of the Markup Agreement should be dismissed because plaintiffs did not include the provisions of the contract in dispute in the complaint or incorporate the contract by reference. *See* Def.'s 12(b)(6) Mem. 4. The Markup Agreement was attached to the complaint, incorporating it by reference. *See* Compl. Ex. B.

The defendant's motion to dismiss for failure to state a claim is denied.

### IV. Motion to Dismiss for Lack of Personal Jurisdiction

#### A. Standard of Review for a 12(b)(2) Motion

■ Lack of personal jurisdiction requires dismissal. *See* Fed.R.Civ.P. 12(b)(2). Pleadings and affidavits are construed in a light favorable to plaintiff. *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 57 (2d Cir.1985). Plaintiff's prima facie showing must include facts that, if credited by a trier, would suffice to establish jurisdiction over the defendant. *Id.* ("[T]he prima facie show-

ing must be factually supported."). Here, limited and expedited discovery on personal jurisdiction was ordered and completed. *See* Order, ECF No. 12; Min. Entry, ECF No. 23.

An evidentiary hearing on this issue was conducted at which Hong was made available by telephone. *See* Order, ECF No. 30; Hr'g Tr. 8:4–19:6.

### B. Personal Jurisdiction: Law

Plaintiffs argue that Hong is subject to specific personal jurisdiction under New York's long-arm statute, CPLR 302. To be subject to long-arm jurisdiction, the defendant, either personally or through an agent, must have transacted business within New York or contracted to send goods here, and the cause or causes of action must arise from that business activity. *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC,* 450 F.3d 100, 103 (2d Cir.2006). In relevant part, CPLR 302(a) provides:

> As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary ... who in person or through an agent [1] transacts any business within the state or [2] contracts anywhere to supply goods or services in the state....

N.Y. C.P.L.R. § 302 (McKinney 2008).

If New York law permits the exercise of long-arm jurisdiction, the Due Process Clause of the Constitution must be satisfied. *Chloe v. Queen Bee of Beverly Hills, LLC,* 616 F.3d 158, 164 (2d Cir.2010). Due process requires the defendant to have sufficient "minimum contacts" with the forum state to justify the exercise of personal jurisdiction and for the assertion of jurisdiction to be reasonable. *Id.* (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)).

### 1. Transaction of Business within New York

A nonresident "transacts" business in New York when he purposefully engages in activities that invoke the benefits and protections of New York laws. *Parke–Bernet Galleries v. Franklyn,* 26 N.Y.2d 13, 308 N.Y.S.2d 337, 256 N.E.2d 506, 509 (1970); *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,* 171 F.3d 779, 787 (2d Cir.1999). Among the factors that bear on whether an out-of-state defendant transacts business in New York are: (1) whether the defendant has an on-going contractual relationship with a New York entity; (2) whether the contract was negotiated or executed in New York and whether, after executing a contract with the New York entity, the defendant visited New York to conduct meetings regarding the relationship; and (3) the choice-of-law clause in any such contract. *Sunward Elecs., Inc. v. McDonald,* 362 F.3d 17, 22–23 (2d Cir.2004) (citing *Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.,* 98 F.3d 25, 29 (2d Cir.1996)). No one factor is dispositive and others may be considered. *See id.* Ultimately, the determination is based on the totality of the non-resident's interactions with and activities in New York. *Bank Brussels,* 171 F.3d at 787 (internal citations omitted).

### 2. Imputing Jurisdiction through an Agent

For the purposes of determining jurisdiction under CPLR 302(a), the term "agent" is broadly interpreted. *Grove Press, Inc. v. Angleton,* 649 F.2d 121, 122 (2d Cir. 1981). Rather than require a formal agency relationship, the court looks to the realities of the commercial situation. *CutCo Indus., Inc. v. Naughton,* 806 F.2d 361, 366 (2d Cir.1986). To establish agency, defendant's agent must have transacted business in New York "for the benefit of and with the knowledge and consent of [the defendant]" and the defendant must have "exercise[d] some control over [the agent] in the matter." *Kreutter v. McFadden Oil Co.,* 71 N.Y.2d 460, 468, 527 N.Y.S.2d 195, 522 N.E.2d 40 (1988), *accord Retail Software Services, Inc. v. Lashlee,* 854 F.2d 18, 22 (2d Cir.1988).

### 3. Claims Arising from New York Transactions

For the court to exercise long-arm personal jurisdiction, the plaintiff's cause of action must "arise from" the defendant's New York transaction or contract. *See Cut-*

*Co*, 806 F.2d at 365. This requirement reflects a distinction between specific long-arm and general personal jurisdiction: the former does not require systematic contacts between the defendant and the forum state, but contacts as do exist must be an aspect of the plaintiff's cause of action.

■ For a claim to "arise from" the defendant's New York contacts, plaintiffs must make an adequate showing that there is a nexus between the defendants' contacts with New York and the underlying dispute. *McGowan v. Smith*, 52 N.Y.2d 268, 437 N.Y.S.2d 643, 419 N.E.2d 321, 323 (1981) (requiring an "articulable nexus between the business transacted and the cause of action sued upon."); *accord Beacon Enterprises, Inc. v. Menzies*, 715 F.2d 757, 764 (2d Cir. 1983). "Nexus" is construed broadly. *See Bank Brussels*, 305 F.3d at 127–28 (a nexus exists where the cause of action "relate[s] to" defendant's minimum contacts). The court examines the "totality of the circumstances surrounding the defendant's activities in New York in connection with the matter giving rise to the lawsuit," to decide if the plaintiffs have shown adequate nexus between the contacts and their cause of action. *Hoffritz*, 763 F.2d at 60.

### 4. Due Process Considerations

A finding that New York may exercise personal jurisdiction over an out-of-state party must be measured against federal constitutional limitations of the Due Process Clause of the Fourteenth Amendment. *See, e.g., Int'l Shoe*, 326 U.S. 310, 66 S.Ct. 154 (1945). The goal is to "protect[ ] a person without meaningful ties to the forum state from being subjected to binding judgments within in its jurisdiction." *Metro. Life Ins. C. v. Robertson–Ceco Corp.*, 84 F.3d 560, 567 (2d Cir.1996).

Due process requires analysis of two related components: (1) minimum contacts; and (2) reasonableness. *Id.* An inquiry into the first component, minimum contacts, is a question of "whether the defendant has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction." *Chloe*, 616 F.3d at 164. The second, reasonableness, involves consideration of "whether the assertion of personal jurisdiction comports with 'traditional notions of fair play and substantial justice'—that is, whether it is reasonable to exercise personal jurisdiction under the circumstances of the particular case." *Id.*

### C. Application of Law to Facts

■ Plaintiffs' primary theory for obtaining jurisdiction over Hong is that Gaze transacted business in New York as Hong's "agent." Plaintiffs have successfully established a prima facie case that jurisdiction over Hong is proper under CPLR 302(a), on an agency theory, and Due Process concerns are met. It is unnecessary to analyze plaintiffs' alternative theory that Hong personally transacted business in New York.

### 1. Gaze is Hong's Agent

■ Whether an agency relationship exists is a question of fact. *Cabrera v. Jakabovitz*, 24 F.3d 372, 385–86 (2d Cir.1994). *Kreutter* requires the plaintiffs to rely on facts establishing that the corporate officer was the driving force behind the New York transactions. *See* 71 N.Y.2d at 470–73, 527 N.Y.S.2d 195, 522 N.E.2d 40; *see also Karabu Corp. v. Gitner*, 16 F.Supp.2d 319, 325 (S.D.N.Y.1998). The facts must indicate personal involvement on behalf of the corporate officer in the activities giving rise to the suit. *Ontel Products, Inc. v. Project Strategies Corp.*, 899 F.Supp. 1144, 1149 (S.D.N.Y.1995).

In *Kruetter*, the corporate officer was directing corporate transactions for his personal benefit. 71 N.Y.2d at 463–64, 527 N.Y.S.2d 195, 522 N.E.2d 40; *see also Chloe*, 616 F.3d 158 at 169 (finding personal jurisdiction over non-resident corporate employee in trademark infringement case where defendant was "integrally involved" in shipment of an infringing bag into New York and benefitted from this infringing conduct through the comingling of corporate and personal assets); *Retail Software Services v. Lashlee*, 854 F.2d 18, 20, 22 (2d Cir. 1988) (finding personal jurisdiction over corporate officer defendants alleged to have engaged in fraud to induce the New York plaintiff to enter into a franchise agreement with their corporation in New York).

Hong has an ownership interest in Gaze, he is closely involved in the corporation's daily management, and as president of the corporation he has signed at least one contract selecting New York law and forum. Compl. ¶¶ 19–20, Ex. B. These are ordinary acts of running a small company. If these facts alone were sufficient to impute jurisdiction under agency theory, then corporate executives of a small incorporated business would be subject to long-arm jurisdiction in New York so long as the corporation transacted business here. *See Ontel,* 899 F.Supp. at 1149 ("It is not enough that [defendant], as President ... possessed authority to direct all the activities that gave rise to this suit. If that were the case, the President of every company would be subject to jurisdiction in New York based on activities with which he or she had no personal involvement....").

Here there is an additional factor at work. Hong orally licensed the URVANA mark to Gaze. Then, as president of Gaze, Hong directed the corporation's distribution of UR-VANA marked garments to plaintiffs in New York under the Markup Agreement and purchase orders. While Gaze and plaintiffs were engaged in business together, Hong granted plaintiffs limited rights to sell goods bearing *his* mark. Hong was aware that his mark, which is now central to this litigation, would to be significant to Gaze and to shipments to the plaintiffs in New York.

As in *Kreutter* and other cases exercising jurisdiction over non-resident corporate defendants, Hong benefitted from the course of dealing in New York because use of his mark was central to the transactions. *See e.g., Retail Software Servs., Inc. v. Lashlee,* 854 F.2d 18, 23 (2d Cir.1988) (presuming corporate officers, as directors and shareholders, "stood to benefit" from the sale of their franchises in New York); *Basquiat v. Kemper Snowboards,* No. 96 Civ. 0185, 1997 WL 527891 at *3 (S.D.N.Y. Aug. 25, 1997) (relatively high ranking position of defendant within small company implied that he would derive financial benefit from sales of infringing product); *Kinetic Instruments, Inc. v. Lares,* 802 F.Supp. 976, 985 (S.D.N.Y.1992) (concluding patent infringement occurred for the benefit of the sole shareholder who directed the infringement). As the sole shareholder of Gaze, as well as owner of a crucial trademark, Hong benefits from the corporation's dealings in New York. *See Karabu,* 16 F.Supp.2d at 324 n. 6 ("Cases finding the benefit prong of *Kreutter* to be satisfied typically have involved claims against the controlling shareholders of closely held corporations.").

### 2. Plaintiffs' Claims Arise from the New York Transactions

To exercise specific personal jurisdiction under New York's long-arm statute, plaintiffs' claims must arise from defendants' contacts with New York. *See Chloe,* 616 F.3d at 166. Plaintiffs have shown a close connection between their causes of action and Gaze's New York contacts, which are imputed to Hong on an agency theory. Plaintiffs' claims for breach of contract arise from the terms of the Markup Agreement, a contract selecting New York law and forum under which Gaze sent goods to New York. Plaintiffs' claims for declaratory relief arise from Gaze's transactions with New York, which involved sending marked apparel to plaintiffs in New York over a period of two years. As Hong testified, plaintiffs implicitly had certain rights to use and resell goods bearing the mark while the contracts were in force. Hr'g Tr. 12:9–21. The extent of their rights is a question for future determination on the merits. For jurisdictional purposes, it suffices that there is a close nexus between plaintiffs' claims for declaratory relief regarding their use of the mark and Gaze's New York transactions and contracts.

### 3. Due Process is Satisfied

Asserting jurisdiction over Hong on a theory of agency does not offend notions of fair play and substantial justice. *See generally Chloe,* 616 F.3d at 171–72; *Retail Services,* 854 F.2d at 22.

Hong has minimum contacts with New York. Defendant purposefully directed his activities to affect forum residents and the suit arises out of those activities. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 471–72, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). The determination that an entity has "transacted business" for the purposes of CPLR

302(a)(1) will generally satisfy the minimum contacts requirement. *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 247 (2d Cir.2007). As established in the preceding section, plaintiffs have made a prima facie showing that Hong transacted business with New York through the acts of his putative agent, Gaze. Gaze purposefully directed itself to New York by contracting to supply goods here and by substantial shipments to New York pursuant to the contract. Plaintiffs' suit arises from these activities. Minimum contacts are achieved.

 Even where minimum contacts are established, an assertion of jurisdiction over an out-of-state party must be reasonable: it cannot "offend traditional notions of fair play and substantial justice." *See Asahi Metal Indus. Co. v. Superior Court of Cal., Solano Cnty.*, 480 U.S. 102, 113, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). The defendant who has purposefully directed himself into the forum may show from the presence of other factors that the forum's exercise of jurisdiction over him is inconsistent with his due process rights. *Burger King*, 471 U.S. at 477, 105 S.Ct. 2174. These factors are (1) the burden on the defendant, (2) the interests of the forum state, and (3) the plaintiffs interest in obtaining relief. *Asahi*, 480 U.S. at 113, 107 S.Ct. 1026. Also to be weighed is the interstate judicial system's interest in obtaining the most efficient resolution of controversies and the states' shared interest in furthering fundamental substantive social policies. *Id.; see A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 83 (2d Cir.1993) (discussing reasonableness factors).

Hong does not argue that other considerations render jurisdiction over him unreasonable. It is undisputed that the litigation between Gaze and plaintiffs will be tried in New York. As owner of the URVANA trademark, president of Gaze, and a signatory of the agreement between the parties, Hong will be the main person in interest in that litigation. Hong will undoubtedly face some burden by being forced to litigate in New York rather than in California, but this is a weak factor due to the conveniences of modern communication and transportation. *See Kernan v. Kurz–Hastings, Inc.*, 175 F.3d 236, 244 (2d Cir.1999). Given his foreseeable role in the Gaze litigation, it is also not clear that the burden will be greater on him by virtue of being subjected to personal jurisdiction as an individual defendant. *See Kreutter*, 71 N.Y.2d at 471, 527 N.Y.S.2d 195, 522 N.E.2d 40. In any event, litigating in New York will not be so "so gravely difficult and inconvenient" for Hong that he is "at a severe disadvantage in comparison to his opponent." *Burger King*, 471 U.S. at 478, 105 S.Ct. 2174. It is desirable that all aspects of the dispute be resolved in a single litigation before one court so as to prevent inconsistent judgments.

## V. Conclusion

Plaintiffs' substantive claims for relief against Gaze are plausible. Hong is subject to personal jurisdiction.

Defendants' motions to dismiss are denied. A date for trial will be set at a hearing on November 21, 2013 at 10:30 a.m.

SO ORDERED.